# WILLIAM F. DOWNS *vs.* SHERLOCK SWANN et al.

*Police Power—Photographing and Measuring Under Bertillon System of Person Arrested Before Conviction—Limited Use of Photograph.*

The Police Commissioners of Baltimore City may lawfully secure the means of identifying a person arrested upon a charge of felony, but not yet tried or convicted, by photographing and measuring him according to the Bertillon system, since under sec. 744 of the City Charter, the Commissioners are directed to preserve the public peace, prevent crime and arrest offenders, and the photographing and measuring of a prisoner is a reasonable exercise of this delegated power and does not violate his rights of personal liberty.

But the Police Commissioners are not authorized to put such photograph in their rogues' gallery, or distribute copies of it

to the police authorities of other cities, unless the prisoner is convicted or he becomes a fugitive from justice.

*Decided June 30th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Harry B. Wolf,* for the appellant.

1. It is the duty of a police officer in arresting a citizen to take him before a magistrate for an immediate hearing, and the police officer has no other powers over the person of the citizen arrested, and that the police board has no greater powers than the individual police officer. *Brish* v. *Carter.* 98 Md. 451; *Twilley* v. *Perkins,* 77 Md. 252; *Edger* v. *Burke,* 96 Md. 722; *Kirk & Son* v. *Garrett,* 83 Md. 400.

2. When a hearing is had before a magistrate, if the citizen is admitted to bail the police officer has no further power over his person. 3 *Cyc.,* 898; *Doyle* v. *Russell,* 30 Barb. 300; *Ingram* v. *State,* 27 Ala. 17.

3. When the magistrate commits the accused to the warden of the jail the police have no further power over his person. *Latrobe's Justice Practice,* sec. 1795.

4. As to the right to photograph a person accused of crime before trial is had. It is a known fact that the Bertillon system has become installed in nearly all of the large cities, and while of great value in some cases, it has notoriously been abused. Its use needs now those limitations and restrictions thrown around it, which only State legislation can provide. Its indiscriminate use, and particularly when its subject is a citizen who has not been convicted of a criminal offence, is cruel and tyrannical. It is also violative of the fundamental

principles of our free institutions. Realizing that many persons are arrested upon entirely inadequate and insufficient evidence; that these offences vary from the comparatively unimportant and slight ones, where only a nominal fine is imposed, up to the grave offence of murder, involving the death penalty; that the hearing before the magistrate is always superficial, because it is his duty to commit if there is any evidence whatever; that the whole spirit of our criminal procedure is based upon the conception of the innocence of the accused; that no powers have been given to the police in arresting persons accused of crime, except to see that such are brought to trial, where the presumption of innocence still follows them, even up to the rendition of the verdict, we may well stand aghast at the unrestrained and unlimited power demanded by the police board over the citizens of this city who are simply charged with a violation of law and presumptively innocent. The appellees say in their answer that they only intend to make a limited use of the photograph, but there is no law restraining or limiting such use, and therefore their assurance in this particular instance cannot be enforced against them. They claim a discretion as to how they would use these photographs and measurements, which, if granted, would give them the discretion to injure permanently the reputation of any citizen who might be arrested. *Schulman* v. *Whitaker,* 7 L. R. A. N. S. 274; *Tiedeman, Control of Persons and Property,* 157.

In the case of *Itzkovitch* v. *Whitaker,* 115 Louisiana, 479, 1 L. R. A. New Series, 1147, the Court restrained the captain of police from subjecting the accused person to the tests of the Bertillon system prior to his conviction. These and the case of *ex rel Gow* v. *Bingham,* 57 Mis. (N. Y.) 62, are the only authorities in the country where this point has been clearly raised by the police, and afford, it is submitted, respectable and safe precedents for the Court's action in this case.

In *Jenkins* v. *Kuhne,* 57 Misc. (N. Y.) 30, Kuhne, who was in charge of police headquarters when a *habeas corpus*

was served to produce Jenkins, and had the latter photographed before returning the prisoner, was punished for contempt of Court.

The case of *Gow* v. *Bingham, supra,* is made to rest squarely upon the right of privacy and immunity from interference of the person of a citizen. In the Louisiana cases, the remedy was by way of injunction.

"The right to privacy though an unsettled one, is becoming more and more definitely recognized in Courts of equity." *Edison* v. *Edison, Polyform Mfg. Co.,* 67 A. 392. "Equity will enjoin the unauthorized exhibition of the plaintiff's photograph." *Rhodes* v. *Sperry-Hutcheson Co.,* 104 N. Y. Supp. 1102.

The case of *Schaefer* v. *United States,* 24 D. C. Appeals, page 426, relied upon by the Court below, it is respectfully submitted, is not in point. The question in that case related to the admissibility in evidence of a photograph taken under the Bertillon system. The expression of the Court was *obiter dicta,* as the question here presented was not presented there. Such a case was the *Lawrence Case,* 103 Md. 33. This Court decided that the evidence was admissible, irrespective of the way it was obtained.

*Luther Eugene Mackall* (with whom was *Alonzo L. Miles* on the brief), for the appellees.

The appellant charges the defendants with having invaded his personal rights. This question may be very properly decided and the appeal dismissed upon the ground that a Court of equity has no jurisdiction to restrain a tort, or injuries to the person.

It is the rights in property that equity interferes to protect, and a party is not entitled to the writ of injunction for a matter affecting his person. If Downs' personal rights were invaded he had a plain, adequate and complete remedy at law, and equity has no jurisdiction to redress his alleged wrongs. *Chappell* v. *Stewart,* 82 Md. 323.

Aside from the question of jurisdiction, the appellees contend that in the discharge of their duties as police officers and detectives of Baltimore City, they have an absolute right to photograph and measure any person who may have been arrested for a felony, if there were reasonable grounds to believe that he was guilty of the charge upon which he was arrested. *Bruns* v. *Clausmeier,* 154 Ind. 599, 50 L. R. A. 73; *Shaffer* v. *United States,* 24 D. C. Appeals, 417; *Tiedeman on Police. Power,* page 102, sec. 103; *Freund on Police Powers,* pages 157-158.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case was taken from an order of the Circuit Court of Baltimore City dissolving a preliminary injunction theretofore issued by it. The injunction had been issued, upon the filing of a bill of complaint to restrain the police authorities of Baltimore City from photographing and measuring the appellant who had been arrested and was detained by them upon a charge of embezzlement of public funds of the city. The defendants having answered the bill made a motion to dissolve the injunction. The motion was heard upon bill and answer and the order dissolving the injunction was passed and the appeal taken therefrom.

The substantial allegations of the bill are as follows: On March 30th, 1909, the plaintiff, William F. Downs, who had for some years theretofore been a clerk in the office of the City Register, was arrested by a city detective upon complaint of the Register and locked up at the Central Police Station on the charge of embezzling $1,000 of the money of the city. The police authorities were about to put Downs through the "Bertillon System," consisting in part of having his photograph taken, the measurement of his head, height, age, color and pedigree, together with his finger prints, in order that the record thereof might be preserved for the use of the Police Department, and it was their intention to take his photograph immediately after his preliminary hearing before the

magistrate and before his trial upon the charge of embezzlement.

It is also alleged that there is a "rogues' gallery" in connection with the Police Department of the city, where are kept the pictures and photographs of criminals and notoriously bad men, who have been tried and convicted of various offenses in different jurisdictions, and that it was the custom of the police authorities to take the photograph of persons arrested for any violations of law, but it does not allege the existence of a custom to put the photographs of unconvicted persons in the "rogues' gallery" or charge the defendants with a purpose to put Downs' picture there, but only with an intention to preserve it for the use of the department.

It is further alleged that Downs, up until his arrest, enjoyed the confidence and esteem of his employer and associates, and that he will be irreparably injured if the police authorities are permitted to carry out their contemplated acts, which it is charged would constitute a violation of his personal liberty and constitutional rights, and that he is without adequate remedy at law.

The appellees, as defendants below, answered the bill, admitting the facts of the arrest and detention of Downs upon the charge of embezzling the public moneys, and that prior to the issue of the injunction it had been their purpose to take his photograph in order to enable them to identify him if it became necessary in any criminal proceeding then pending against him or that might thereafter be instituted against him. They also admit the conducting by them of a bureau of identification under the superintendence of a lieutenant of police on the Bertillon system, in connection with which they photograph persons arrested for felony or other crimes of the character charged against the plaintiff. And they further say that the practice of photographing and measuring persons so charged prevails in every large city of the country where proper police regulations are well established and enforced; and that when a prisoner is arrested charged with a crime of the character charged against the plaintiff, who may be re-

leased upon bail, it is necessary to the proper enforcement of
police regulations and the securing of the prisoner for trial
that a full description of him should be had in order that,
if he should undertake to become a fugitive from justice, the
police and detective department may be in possession of such
information as will enable them to have him identified, wher-
ever he may be found; that the defendants are required in the
proper discharge of their duties to run down and arrest of-
fenders who may escape after having been released on bail,
and that, if they are not permitted to provide efficient means
of identification of persons charged with offenses their efforts
in that direction will become ineffectual and unavailing. Fur-
ther answering, they say that it is not their practice to publish
the photograph of a prisoner who has been arrested upon the
first offense or to place it among the photographs of well-
known and established criminals, until and unless the prisoner
whose photograph has been taken has either been convicted
or has undertaken to escape and avoid the payment of his
bail, and that such was not their purpose with reference to
the plaintiff.

It is also averred in the answer that, since the filing of the
bill, Downs had been admitted to bail in the sum of $10,000,
but that subsequently upon investigation it was discovered
that his alleged embezzlements were of such larger propor-
tions than were disclosed by the testimony taken at the hear-
ing on the first charge and his crime was of such greater mag-
nitude that he was re-arrested and was, at the time of the
filing of the answer, confined in a cell at the Central Police
Station.

The issue presented for our consideration is the propriety
of the dissolution of the injunction upon the case made by the
bill and answer. Without stopping to consider whether the
appellant had an adequate remedy at law for any invasion,
if such there should be, of his personal rights, we will devote
our attention to the substantial issue presented by the record.
The precise question there presented for our determination is
whether the police authorities of Baltimore City may law-

fully provide themselves, for the use of their department of the city government, with the means of identification of a person arrested by them upon a charge of felony, but not yet tried or convicted, by photographing and measuring him under the Bertillon system. It is not directly charged in the bill that the police intend to put his photograph in their rogues' gallery or distribute copies of it to the police authorities of other cities, unless he is convicted or becomes a fugitive from justice, or that they propose to apply his Bertillon record to any other uses than those of their own department of Baltimore City. Furthermore, the answer denies the existence of any purpose to apply the photograph or record of the appellant to any other purpose than that of his identification, if it becomes necessary, in criminal proceedings now pending or hereafter to be instituted against him, unless he is convicted or becomes a fugitive from justice.

In our opinion, the photographing and measuring of the appellant in the manner and for the purposes mentioned and the use of his photograph and the record of his measurement to the extent set forth in the answer by the police authorities of Baltimore City would not constitute a violation of the personal liberty secured to him by the Constitution of the United States or of this State. As was said by the United States Supreme Court in Crowley *vs.* Christenson, 137 U. S. 86: "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from constraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law." In *Jacobson* v. *Massachusetts,* 197 U. S. 11, the same high Court, in discussing the extent of the police power of the State, declared that it "had more than once recognized it as a fundamental proposition that 'persons and property are subjected to all kinds of restraints and burdens to secure the gen-

eral comfort, health and prosperity of the State,' " and many cases are cited in support of the statement. Similar views upon the limits of the police power have been expressed by this Court in a line of cases from *Ford* v. *State,* 85 Md. 465, down to *Watson* v. *State,* 105 Md. 655.

It has also been settled by numerous decisions that the State may delegate the police power to subordinate boards and commissions, and that the reasonable and just exercise by them of the delegated power will be upheld. *Reets* v. *Michigan,* 188 U. S. 505; *Singer* v. *State,* 72 Md. 464; *State* v. *Broadbelt,* 89 Md. 565; *State* v. *Knowles,* 90 Md. 646; *Scholle* v. *State,* 90 Md. 729; *Watson* v. *State,* 105 Md. 650.

A person suspected of the commission of a crime may lawfully be arrested by the sheriff, or police and held in custody until a preliminary hearing of the charge against him can be had before a magistrate and he may then be committed to jail, or held to bail, for the action of the Grand Jury. *Brish* v. *Carter,* 98 Md. 445; *Edgar* v. *Burke,* 96 Md. 722. He may be exhibited for identification to the person injured by the commission of the crime, if it be one of violence, and we see no good reason why the police authorities may not be furnished with the further and more efficient means of his identification provided by the Bertillon process. The populous communities which now exist and the modern facilities for swift and frequent communication and rapid transit afford hitherto unknown facilities for evading arrest or fleeing from justice which should be offset in the public interest by providing the agencies, charged with the duty of preserving the public peace and arresting persons reasonably suspected of the commission of crimes, with the most efficient means of detecting and identifying them, consistent with the protection of the accused persons in the enjoyment of that "liberty regulated by law" to which they are entitled. Sec. 744 of the Baltimore City Charter confers upon the police many of the duties which at common law were incident to the office of sheriff. It makes it the duty of the Police Commissioners of the City among other things "to

preserve the public peace, prevent crime, arrest offenders and protect the rights of persons and property" also to cause to be followed any person whom the Board have reason to believe intends leaving the City for the purpose of violating any laws of the State. The burden of those duties brings the Board clearly within the category of the public agencies which should be furnished with the most approved means of identification of probable wrongdoers and it may be assumed that the Legislature in the imposition of the duties intended also to confer the incidental powers necessary to their discharge.

The right of the Police authorities to employ the Bertillon process for the identification of convicted criminals has been recognized in most, if not all, of the jurisdictions in which the subject has received consideration, although several Courts and text writers have either questioned or denied the right to subject to that process persons accused of crimes before their trial or conviction. *Molineaux* v. *Collins,* 177 N. Y. 395; *Schulman* v. *Whitaker,* 117 La. 703; *Itzovitch* v. *Whitaker,* 115 La. 479; *People ex rel. Gow* v. *Bingham,* 57 Misc. 62; *People* v. *York,* 59 N. Y. Supp. 418; *Owen* v. *Patridge,* 82 N. Y. Supp. 248; *Tiedeman on State and Federal Control of Persons and Property,* Vol. 1, page 57.

The question in the form in which it is now presented to us formed the subject of recent review in the case of *State* v. *Clausman,* 154 Ind. 599, where it was held that a sheriff may lawfully take the photograph, measurement, weight, name, residence, place of birth, occupation and personal characteristics of an accused person committed to his custody for safe keeping, if in his discretion it is necessary to prevent the escape of the accused or to facilitate his recapture if he should do so.

In *Shaffer* v. *United States,* 24 D. C. Appeals, 417, the Court of Appeals of the District of Columbia, speaking through CHIEF JUDGE ALVEY, made a clear and forcible statement of the principles and considerations which led them to the same conclusion at which we have arrived in the

present case, in reference to the constitutional privilege alleged to be involved in it. In that case Shaffer had been arrested by the police of the district upon a charge of murder and upon his trial the prosecution offered in evidence his photograph taken for purposes of identification by the police officer who had him in custody after his arrest. The evidence was objected to on behalf of the prisoner, and in passiny upon the objection, on appeal, the Court in their opinion say:

"We understand the main point of objection to be, that the Government had no right to photograph the accused while holding him in custody, for the purpose of using that photograph to have him identified at the trial.

"This objection is founded upon the theory that the use of the photograph so obtained is in violation of the principle that a party cannot be required to testify against himself, or to furnish evidence to be so used. But we think there is no foundation for this objection.

"In taking and using the photographic picture, there was no violation of any constitutional right. We know that it is the daily practice of the police officers and detectives of crime to use photographic pictures for the discovery and identification of criminals, and without such means many criminals would escape identification or conviction.

"It is one of the usual means employed in the public service of the country, and it would be a matter of regret to have its use unduly restricted upon any fanciful theory of constitutional privilege.

"It could as well be contended that a prisoner could lawfully refuse to allow himself to be seen while in prison by a witness, brought to identify him, or that he could rightfully refuse to uncover himself, or to remove a mark in Court, to enable witnesses to identify him as the party accused, as that he could rightfully refuse to allow an officer, in whose custody he remained, to set an instrument and take his likeness for the purposes of identification."

For the reasons mentioned in this opinion we will affirm the order appealed from, but we must not be understood by so doing to countenance the placing in the "rogues gallery" of the photograph of any person, not a habitual criminal, who has been arrested but not convicted on a criminal charge, or the publication under those circumstances of his Bertillon record. Police officers have no right to needlessly or wantonly injure in any respect persons whom they are called upon in the course of·their duty to arrest or detain, and for the infliction of any such injury they would be liable, to the injured person, in the same manner and to the same extent that private individuals would be.

*Order affirmed with costs.*