Emmet C. Poyer et al., Plaintiffs-Appellants, v. Thomas Boustead, Chief of Police, City of Rockford, Illinois et al., Defendants-Appellees.

Gen. No. 10,763.

Opinion filed December 4, 1954. Released for publication December 23, 1954.

RUSSELL J. GOLDMAN, of Rockford, for appellants.

ANGELO N. GAZIANO, and LAVERNE E. ANDERSON, both of Rockford, for appellees.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Emmet C. Poyer and twenty-two others, members of the C. I. O. unions in Rockford, Illinois, were on January 12, 1954, assembled in the vicinity of the Quaker Oats Company in Rockford, Illinois. There was a strike in progress against the company and on that day the chief of police arrested the above named plaintiffs for violation of the city ordinance, and all of them were placed in the jail in Rockford, Illinois. Shortly thereafter the chief of police was notified that all of the plaintiffs objected to being fingerprinted and having their pictures taken, claiming that it was a violation of the statute of the State of Illinois, and that it violated their constitutional rights. The chief of police did fingerprint and take the pictures of all of the plaintiffs.

On January 15, all of the plaintiffs filed a petition for an injunction in the circuit court of Winnebago

county to restrain the chief of police from forwarding the fingerprints and photographs to the Department of Justice in Washington, D. C. The defendants filed a motion to dismiss the petition because it did not state a cause of action. On a hearing, the court sustained the motion and dismissed the petition at the complainants' cost, and it is from this judgment that they have perfected an appeal to this court.

It is insisted by the appellants that the statute in regard to taking prisoners' pictures and for fingerprints applies only to certain designated felonies, and that the police exceeded their authority and violated the rights of the plaintiffs when they took the pictures and prints and claim that the pictures and prints should be returned to the appellants. In support of their contention they cite the case of *Itzkovitch v. Whitaker,* a Louisiana case reported in 39 Southern at page 499 [115 La. 479]. In reading this case it will be observed in the petition for injunction that there was an averment that the chief of police had taken the petitioner's picture and was intending to put it in the rogues' gallery and the petitioner asked for an injunction to restrain him from doing so. He also stated that he was not guilty of the crime for which he was arrested and that he had always borne a good reputation. The court issued a preliminary injunction as requested in the complaint, and the court in its opinion stated: "For the purpose of the hearing of this exception, the allegations of plaintiff's petition for an injunction must be taken as true. The plaintiff, for the said hearing, must be considered an honest man. We think that the publication of an innocent man's photograph in the Rogues' Gallery gives rise to sufficient grounds to sustain an injunction."

The plaintiffs also rely on the *People v. Hevern,* 127 Misc. 141, 215 New York Supplement at page 412. This case arose and was decided in the magistrate's court of

the City of New York and the opinion was written by the magistrate himself and was not decided by a court of review. In New York at the time of this case there was a statute which required that when a man was arrested and charged with a felony, that before he could be released on bail, he must first have his fingerprints taken. The defendant offered to give bail and was refused, because he refused to have his fingerprints taken, and the magistrate at that time held that this statute was unconstitutional, as it was against the constitutional provision in regard to a man charged with a criminal offense to give bail. This case it seems to us, has very little bearing upon the question now before us, namely; is it lawful for a police officer to take a prisoner's fingerprints when he is only charged with a misdemeanor.

In the case of *People v. Sallow,* 100 Misc. 447, 165 New York Supplement, page 915 states: "Laws requiring finger prints to be taken of persons found accused of disorderly conduct, etc., to determine whether they have been previously convicted, does not violate Art. 1, Sec. 6 of the constitution providing that no person shall be compelled in a criminal case to be a witness against himself."

In the case of *Bartletta v. McFeeley* in the court of chancery of New Jersey, reported in 152 Atlantic Reporter, page 17 [107 N. J. Eq. 141], we find the following: "The next question is this: In what cases can the police photograph and fingerprint a prisoner? The principle involved is the same if the question is: What prisoners may they search? Whether any certain prisoner is to be fingerprinted and photographed is an administrative question to be determined by the head of the police department making the arrest, or by those subordinates to whom he may delegate the decision. The police department have the responsibility of the safety of the people, and they must be given the neces-

565

sary discretion to enable them successfully to assume this responsibility. When an arrest is made, the police frequently are unfamiliar with the record of their prisoner, and one of the purposes of circulating his description among other police departments is to learn whether or not he is a first offender. No rule can be laid down to guide the police so that they may know whether or not the prisoner in their hands is one whom they had best watch carefully in the future or is one who is liable to escape before trial. No distinction can be made by the court between prisoners charged with high misdemeanors and those charged with misdemeanors. The fingerprinting of the latter is frequently as important as the fingerprinting of the former. Of course, in these, as in other matters, the police must not be actuated by malice."

In the case of *Shannon v. State,* in the Supreme Court of Arkansas, reported in 182 South Western Reporter, Second Series at page 384 [207 Ark. 658], a man had been released on bail and the sheriff filed a petition in the circuit court of Union county in that State to require the defendant to appear before him and have his fingerprints taken. It is claimed that this was a violation of his constitutional rights. The court granted the petition and Shannon appealed and in the opinion we find this language: "We think the trial court did not commit error in making the order in question. While we have no statute authorizing or directing sheriffs and other peace officers to fingerprint persons in their custody suspected or accused of crimes, we think they have the power to do so, under the general police power, *to* establish identification of such persons, and that to do so is not an invasion of any constitutional or natural right of such persons. The courts generally hold that 'evidence as to the correspondence of fingerprints is admissible to prove the

identity of accused.' 22 C. J. S., Criminal Law, § 616, p. 937.

"An interesting case is that of Downs v. Swann, 111 Md. 53, 73 A. 653, 23 L. R. A., N. S. 739, 134 Am. St. Rep. 586. Downs was charged with embezzlement. While in custody and before trial he was protographed [sic], measured and fingerprinted. He thereafter sought to restrain the use of same in his trial. Maryland, like Arkansas, has no statute authorizing such photographing, etc. The lower court held that the officers acted within their rights and, on appeal, the judgment was affirmed. That case is cited with approval in United States v. Kelly, 2 Cir., 55 F.2d 67, 69, 83 A. L. R. 122, as is also our own case of Mabry v. Kettering, supra."

█ A case in point is *Downs v. Swann,* that arose in the court of appeals in Maryland, reported in 73 Atlantic at page 653 [111 Md. 53]. The court stated that the precise question there presented for our determination is whether the police authorities of Baltimore City may lawfully provide themselves, for the use of their department of the city government, with the means of identification of a person arrested by them upon a charge of felony, but not yet tried or convicted by photographing and measuring him under the Bertillon system and further in the opinion they use this language: "In our opinion the photographing and measuring of the appellant in the manner and for the purposes mentioned, and the use of his photograph and the record of his measurement to the extent set forth in the answer by the police authorities of Baltimore City, would not constitute a violation of the personal liberty secured to him by the Constitution of the United States or of this state. As was said by the United States Supreme Court in Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620: 'The

possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from constraint, under conditions essential to the equal enjoyment of the same right by others. It is, then, liberty regulated by law.' In Jacobson v. Massachusetts, 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643, the same high court, in discussing the extent of the police power of the state, declared that it 'had more than once recognized it as a fundamental proposition that "persons and property are subjected to all kinds of restraints and burdens to secure the general comfort, health, and prosperity of the state," ' and many cases are cited in support of the statement."

In the case of *United States v. Kelly,* circuit court of appeals of the second circuit, 55 Federal Reporter, Second Series, page 67, which arose in the state of New York a part of the syllabus is as follows: "Finger printing of defendant at time of arrest for sale of quart of liquor *held* proper as appropriate means to identify criminals and to detect crime," and in passing upon this question the court uses this language:

"Finger printing seems to be no more than an extension of methods of identification long used in dealing with persons under arrest for real or supposed violations of the criminal laws. It is known to be a very certain means devised by modern science to reach the desired end, and has become especially important in a time when increased population and vast aggregations of people in urban centers have rendered the notoriety of the individual in the community no longer a ready means of identification.

"The Maryland Court of Appeals held that it was lawful, though before conviction, to photograph and measure under the Bertillon system a person arrested on a felony charge. Downs v. Swann, 111 Md. 53, 73 A. 653, 23 L. R. A. (N. S.) 739, 134 Am. St. Rep. 586. In Maryland no statute existed authorizing such means of identification. The Supreme Court of Indiana reached a similar conclusion in State ex rel. Bruns v. Clausmeier, 154 Ind. 599, 57 N. E. 541, 50 L. R. A. 73, 77 Am. St. Rep. 511, and O'Brien v. State, 125 Ind. 38, 25 N. E. 137, 9 L. R. A. 323, and so did the Supreme Court of Arkansas in Mabry v. Kettering, 92 Ark. 81, 122 S. W. 115. The Court of Appeals of the District of Columbia is in accord. Shaffer v. U. S., 24 App. D. C. 417. The Court of Chancery of New Jersey in Bartletta v. McFeeley, 107 N. J. Eq. 141, 152 A. 17, held only a year ago, and in the absence of a statute, that a prisoner who had been arrested for possessing papers pertaining to a lottery was lawfully subjected to photographing, finger printing, and measurement under the Bertillon system. To the same effect is the opinion of the New York Court of General Sessions in People v. Sallow, 100 Misc. Rep. 447, 165 N. Y. S. 915, and of the Supreme Court of the District of Columbia in United States v. Cross, 9 Mackey (20 D. C.) at page 382." It will be observed in this case that they cite with approval the case of *Downs v. Swann, supra,* and *Mabry v. Kettering,* 92 Arkansas 81, 122 S. W. 115, and that in Maryland and Arkansas there was no statute in regard to taking pictures and fingerprints of supposed criminals.

The Appellate Court of the First District in passing upon whether it was a violation of the rights of workmen to compel them to have their fingerprints taken before they were acceptable on a public housing project, *Young v. Chicago Housing Authority,* 350 Ill. App. at

569

page 287 use this language: "No stigma is attached to fingerprinting. It is widely accepted and used as a method of determining employee fitness. The obvious advantages and widespread acceptance of fingerprinting are apparent from the fact that the Armed Forces and other federal, state and local agencies, including Civil Service, have for many years required the personnel to be fingerprinted as an aid to investigation of their qualifications, as a deterrent to furnishing false information and to enable quick and certain identification in the event of death." It is our conclusion that the chief of police was within his rights in fingerprinting the appellants after their arrest.

■■ The trial court held that the complaint in question did not state a cause of action. A motion to strike was general. In the statement of facts of appellees they have included many things not shown by the record. We are bound to pass upon the facts as stated in the complaint, and the motion to strike admitted all facts well pleaded in the complaint to be true, and what happened after the petition for injunction was filed is wholly immaterial, and it should not be included in a statement of facts relative to the case in question. As before stated, it is our opinion that the chief of police was within his rights in taking the photographs and pictures in question, and it will be observed that the only relief asked in the complaint is, "that the chief of police and other officers be restrained from forwarding said fingerprints and photographs to the Department of Justice at Washington, D. C. and that they be ordered to immediately return the same to plaintiffs personally or their attorney." The statute provides that if a defendant is found not guilty, then the photographs and fingerprints should be returned to him. There is no allegation in the complaint that any one or all of the defendants are not guilty of the offense for which they were arrested, also there is no allegation

in the complaint that the chief of police, or any of the other defendants still have in their possession the photographs and fingerprints.

At the time of the hearing on the complaint for injunction there had been no determination whether any or all of the defendants were innocent or guilty, and until that was done the chief of police had a right to retain in his possession these photographs and fingerprints. The court did not err in dismissing the complaint, and the judgment should be and is affirmed.

*Affirmed.*

Dove, J., concurs.

Anderson, J., took no part.