### MILLER *v*. GILLESPIE.

EQUITY—JURISDICTION—RECORDS—POLICE RECORDS.

Equity will not compel the surrender by a city police department of an accurate record containing a statement that a certain person has been arrested on a criminal charge, his address, occupation, personal description, and the result of the trial, indicated as "dismissed," for cancellation, as such report does not expose such person to ridicule, obloquy or disgrace.

Appeal from Wayne; Bridgman, J., presiding. Submitted April 3, 1917. (Docket No. 4.) Decided May 31, 1917.

Bill by Francis J. Miller against John Gillespie, commissioner of the Metropolitan police force of Detroit, and others, for the surrender for cancellation of certain records in said police department. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*James H. Pound,* for plaintiff.

*Allan H. Frazer* and *Gillette Wastell,* for defendants.

Owing to what seems to have been either the ignorance or malice of the complaining witness, a warrant was issued by one of the police justices of the city of Detroit for the arrest of the plaintiff, upon a charge of feloniously embezzling and converting to his own use an article of personal property. The warrant was delivered for service to one of the policemen of the city. Learning that in his absence an officer or officers had visited his home, plaintiff called police headquarters to find out what was wanted, and was told to present himself at the police court and that a warrant for his arrest had been issued. Presenting himself, he was told by the officers that he was under arrest, and, while awaiting the calling of his case, he was asked by a policeman certain questions, which he answered; the officer making a memorandum in writing. Being arraigned, he pleaded not guilty, gave his personal recognizance for appearance for trial, and, the cause being at a subsequent day called for trial, a jury impaneled, and testimony taken, he was dismissed by order of the court. It seems to be clear that he had committed no offense and that the trial ought to have been concluded with a verdict of acquittal. The entry made in the docket of the court is: "Testimony taken and case dismissed."

Plaintiff is a man of affairs, has a family consisting of a wife and nine children, was never before arrested or charged with having violated the criminal laws. The police department of the city of Detroit requires a report to be made when an arrest is made by a police officer. It is made and preserved in the form of a card, and in the particular case the card record contains the plaintiff's name, residence, the nature of the charge, which is given as "simple larceny," the names of the officers who made the arrest, and the result of the trial, which is stated in the single word "dismissed." Upon the face of the same card—the whole card being

a printed form with blank spaces—appears the following:

"Date and time Aug. 13, 1914. Hour 10 a. m. Age 44. Sex M. Color W. Nationality U. S. M. or S. M. R. and W. Yes. Height 5 ft. 8 1/3 in. Weight 170 lbs. Hair black. Eyes brown. Build stout. Complexion dark. Occupation contractor."

Plaintiff, testifying, said:

"I don't believe I asked the judge or any police officers in the courtroom that day for the card. I asked them that later on, that I would like the records destroyed.  *  *  *

"Q. Did you get the card back?

"A. No. I don't just remember whether it was a card or not."

The bill in this cause is filed to obtain a decree requiring defendants, who are respectively described as the commissioner of the Metropolitan police force of the city, its superintendent, and its secretary and record keeper, "to surrender for cancellation, all statements claimed to have been made in the enforced statements from your orator, also that all reference to your orator upon the books, blotters, statements, histories, and in the records or written memoranda of the police department of the city  *  *  *  be decreed to be given up for destruction to the register of this court," and for other and general relief. The bill was dismissed, and plaintiff has appealed.

OSTRANDER, J. (*after stating the facts*). It may be assumed, I think, that two purposes are supposed to be served by making and by preserving in the police department a record such as the one in question here. There may be other reasons and purposes; but two, at least, appear to be fairly obvious ones. The responsible superior police officials are thereby furnished with definite and authoritative data of the activities of the department. This is, I assume, one purpose. The

other is the preservation, for future reference and use, of the data so secured. The form of the record before us serves both purposes, and that it was intended to do so is evidenced by the form of the report. It gives information, not only that a person giving a certain name has been arrested, but information also of the personal appearance of the prisoner as well as his nationality and some of his acquirements.

It is not complained that the record is a false one. It has not been claimed, in argument, that it is improper, or a violation of private or property rights of the person arrested that such a report should be, in the first instance, made. Indeed, the statute sanctions it.

"In every case of arrest the same shall be made known to the captain or sergeant on duty in the precinct wherein such arrest is made, by the person making the same; and it shall be the duty of said captain or sergeant, as soon as practicable after such notice, to make written return thereof, according to the rules and regulations of the department, together with the name of the party arrested, the offense and place of arrest, and the place of detention." Charter, Act to Establish a Police Government for the City of Detroit, approved April 17, 1871, § 20; Charter and Laws 1904, par. 677.

It is not contended either that the plaintiff has in the premises any actionable right at law, or that the report, resting in the files of the police department, is a libel. It is contended that, having served the purpose of a report, it appearing that plaintiff is innocent and a good citizen, preservation of the report in a place where future use can be made of it, where it can advertently or inadvertently be published, in a group of records of criminals, cannot be for a lawful purpose or justifiable end, but is a distinct, personal, continuing wrong, for which a court of equity should afford a remedy.

Once it is conceded that the rule of the police de-

partment is unreasonable and that plaintiff has the right to have this record destroyed, the conclusion is inevitable that the officers of the department have committed a wrong which may be redressed at the suit of an individual. The right of the individual to privacy, to be let alone so long as he does no wrong, is in law, when no resulting pecuniary injury or injury to property rights is involved, rather intangible. Alleged invasions by an individual of this alleged right and the jurisdiction of a court of equity to amend the alleged wrong have been considered by the courts, particularly in the cases of *Corliss* v. *Walker*, 57 Fed. 434, 64 Fed. 280 (31 L. R. A. 283) ; *Schuyler* v. *Curtis*, 15 N. Y. Supp. 787, 147 N. Y. 434 (42 N. E. 22, 31 L. R. A. 286, 49 Am. St. Rep. 671) ; *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538 (64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828) ; *Atkinson* v. *Doherty & Co.*, 121 Mich. 372 (80 N. W. 285, 46 L. R. A. 219, 80 Am. St. Rep. 507). See *In re Sawyer*, 124 U. S. 200 (8 Sup. Ct. 482). None of these cases involve the wrong of exposing the person complaining to disgrace, ridicule, or obloquy, and none of them sustain the right of the complaining party to injunctive or other equitable relief.

On the other hand, it has been held (*Itzkovitch* v. *Whitaker*, 115 La. Ann. 479 [39 South. 499, 1 L. R. A. (N. S.) 1147, 112 Am. St. Rep. 272] ; *Schulman* v. *Whitaker*, 115 La. Ann. 628 [39 South. 737]), that an injunction will be granted to restrain a police officer from placing in the "rogues' gallery" the photograph of a prisoner not convicted of crime, who alleged that he was innocent and an honest citizen. In the first of these cases, it was said by the court:

"Every one who does not violate the law can insist upon being let alone (the right of privacy). In such a case the right of privacy is absolute. It must be said that there is some limit to this right, which it is not necessary to discuss in this case. A person may be

arrested, imprisoned, and acquitted, without right to damages. All of this is true, but it bears no application to the issue in hand. Where a person is not guilty, is honest (and that is the only light upon which to consider this case with the issues before us), he may obtain an injunction to prevent his photograph from being sent to the rogues' gallery. He has the personal right to the restraining order, at least for the time being. The theory in opposition to this view is substantially that the picture should be taken and exhibited for the public good. There can be no public good subserved by taking the photograph of an honest man for the purpose before mentioned. The court had jurisdiction to issue the preliminary injunction, and to make it perpetual if the evidence justifies the decree."

The opinions in some of the cases I have cited exhaustively review the subject. None of them is authority for granting relief in the case at bar, unless it can be said that the mere preservation in the files of the police department of a report proper to be made in the first instance—a true report—exposes plaintiff to ridicule, obloquy, or disgrace. I am of opinion that it does not, and, without denying the jurisdiction of a court of equity to afford a remedy for a wrongful invasion of privacy, conclude that the plaintiff is not entitled to the relief asked for, and that the decree must be affirmed, without costs.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.