## HANSSON v. HARRIS.
### No. 10078.

Court of Civil Appeals of Texas. Austin.
Nov. 5, 1952.

Rehearing Denied Nov. 19, 1952.

H. P. Kucera, H. Louis Nichols, Dallas, for appellant.

J. P. Moseley, Dallas, for appellee.

GRAY, Justice.

On January 28, 1952, appellee filed this suit against appellant (in his official capacity as chief of police of the city of Dallas only) and alleged that on March 3, 1950, he was a resident of the city of Dallas and was of good reputation and character; that on that day he was arrested, without warrant, by police officers of the city of Dallas; that his picture, fingerprints and other identification details were taken and made; that he was then placed in the city jail; that copies were distributed to the Federal Bureau of Identification at Washington, D. C., and to other governmental and police agencies. He further alleged that the records of identification were placed in the Identification Bureau of the Dallas Police Department, "and what is also known as the Rogue's Gallery of such Police Department and then was assigned a number, and such number was exhibited so as to type him as a particular kind of criminal, namely, that he was an accoster of females and a type of person upon which it was necessary to hold for a hearing in regard to a peace bond. That plaintiff's picture was taken and a number assigned to him by placing a number under his chin, thereupon photographing him and numbering him as a person of criminal tendencies and placing him as a certain peculiar type of criminal as hereinbefore alleged." He prayed for injunctive relief restraining appellant from sending out and making known to any person the said identification records, and that such records be destroyed and expunged from the records of the city of Dallas.

Appellee did not seek relief by way of damages.

A nonjury trial was had February 14, 1952, and thereafter on March 28, 1952, a judgment was rendered temporarily restraining appellant from circulating or making known to any person the identification and arrest records of appellee. This temporary injunction was conditioned that unless within forty-five days a formal complaint was filed against appellee the injunction would become permanent.

The trial court found that the offense for which appellee was arrested was accosting a female.

Appellant on April 1, 1952, filed what he termed a motion and notice showing that the offense for which appellee was arrested was a misdemeanor, and that because more than two years had elapsed since the commission of the alleged offense a complaint

could not be filed. Art. 181, Vernon's Ann. C.C.P.

The cause before us is treated by all parties as a permanent injunction.

The undisputed facts show that on March 3, 1950, an officer of Lakewood Country Club complained to the deputy chief of police of the city of Dallas that appellee, a former employee at the club, was calling a lady employee during working hours, was calling her at her home at various hours, two, three and four o'clock in the morning, was also following her from her place of employment to her home, and that he had to send someone home with the lady. On this complaint appellee's arrest was ordered. He was arrested and carried to the city jail where his picture and fingerprints were taken. Also, further records of identification including his age, weight and height were made and he was then placed in the city jail. On that night (March 3, 1950) appellee's attorney secured his release by a writ of habeas corpus, appellee gave bond and the writ was made returnable March 4, 1950. On March 4, appellee, his attorney, the deputy chief of police, and an officer of Lakewood Country Club appeared before a criminal district court, and an informal hearing was had in the office of the Judge of that court. No sworn testimony was given at the hearing but an agreement, satisfactory to all parties present, was reached. The agreement was to the effect that appellee would be released to the custody of his attorney who, as stated in appellee's brief, "assured the court that there would be no more trouble from Harris in the future" and if there was then the attorney would personally bring appellee back to court.

No complaint against appellee has been filed. However, there is some evidence in the record that it was because of the above agreement that one was not filed.

The two ordinances of the city of Dallas relied on by appellant are: (1) an ordinance making it a finable offense for any male person to unnecessarily accost a female in a public place, and (2) an ordinance providing:

"When to Arrest Without Warrant

"All policemen in the City of Dallas, in the exercise of a sound discretion, may arrest without a warrant therefor, any person or persons found in suspicious places, or any person or persons found under circumstances reasonably tending to show that such person or persons has been guilty of some felony or breach of the peace, or violation of some municipal ordinance, or are about to commit some offense against some State law or against some municipal ordinance."

The deputy chief of police testified that it was by the authority of these two ordinances that he ordered the arrest of appellee. He further said the records made of appellee were the usual and customary records maintained by the police department of the city of Dallas where a person has been arrested for the investigation of a crime; that they are used in carrying out the duties of his department; that they are kept for the purpose of preventing the commission of crimes, and that the fact that a person's record is on file with the police department has been found to be a means of deterring that person from committing future crimes.

Separate findings of fact and conclusions of law were not requested and none were filed. However, the trial court in his judgment, among other things, found that the police officers were acting in good faith when they arrested appellee.

The only Texas case that has been called to our attention and which we have been able to find bearing on the question before us is Owensby v. Morris, Tex.Civ.App., 79 S.W.2d 934, 935. There appellant sued for damages and also for an injunction restraining appellee from using or circulating his photograph, fingerprints and other identification records made upon appellant's arrest without warrant. In denying appellant relief the Court said:

"We do not intend to hold that a peace officer, in Texas, may arrest, at will, any person whom he suspects may soon commit, or is about to commit

some future crime; but crime is so well organized in our land, and the prompt arrest and conviction of criminals is rendered so difficult, by reason of the present conditions with which law-abiding citizens are forced to cope, we do hold that a peace officer who has good cause to believe, and does believe, that a person is then compounding a crime, for which the officer will be under duty to procure his arrest, may detain him, take his fingerprints, have him photographed, and otherwise identify him, for the protection of society, without being liable for damages by reason of such official acts.

"In the case at bar, appellant was so detained and, after being photographed, etc., was permitted to leave."

The judgment of the trial court denying appellant relief was affirmed.

Appellee argues that the retention and circulation of his identification records is a violation of his right of privacy. The trial court found that the retention and circulation of appellee's identification records will expose "him to ridicule, obloquy and disgrace, and that all of such injuries are irreparable." In Milner v. Red River Valley Pub. Co., Tex.Civ.App., 249 S.W.2d 227, 229, the Court considered the right of privacy and said:

"The right of privacy as such not being recognized under the common law, as it existed when we adopted it, and our Legislature not having given such right by statute, no recovery can be had in Texas under the facts in this record. It may be noted that our Legislature has given a limited right of action under our libel statute, Art. 5430, V.T.S., for the publication of written or printed statements which blacken 'the memory of the dead.' "

Also, see: 138 A.L.R. p. 89, Sec. 10.

The reported cases from other jurisdictions are not in accord in the adjudication of the question before us. See annotations in 83 A.L.R. 127.

If any violation of appellee's right of privacy is presented in the case before us it is by reason of appellee's allegation that his identification records were placed in the "rogue's gallery."

Appellee cites McQuillan, Municipal Corporations, Vol. 16, Sec. 45.19 (p. 542).

"A citizen who has been acquitted of a misdemeanor is entitled to injunctive relief against a violation of his right of privacy by the placing of his photograph in the Rogue's Gallery." Note 55 under this statement cites the two Indiana cases later cited by us.

Appellee's allegation is to the effect that his identification record was assigned a number, and "such number was exhibited * * *." While a number would be of assistance to one searching for information it would be of little significance to the public except when used as an aid for further inquiry.

It appears from the record before us that when identification records of an individual are made such records are classified, indexed and catalogued according to the crime involved. The deputy chief of police said:

"Q. You have a system set up wherein you are looking for the accoster of a female, you have the files indexed where you can look at these pictures? A. Yes."

Appellant said:

"Q. You circulate those pictures on such occasions to the public? A. To the public that came to see them."

Under the record before us we think the term "the rogue's gallery" is given a meaning by innuendo rather than by proof.

In State ex rel. Mavity v. Tyndall, 224 Ind. 364, 66 N.E.2d 755, 757, Tyndall sued to require the surrender to him of photographs, fingerprints etc., made by the police officers of the city of Indianapolis, upon his arrest on misdemeanor charges and which charges were dismissed. Tyndall alleged that it was the custom of the police to place photographs of persons arrested in the rogue's gallery "for public exhibition". Demurrers were sustained to the petition and it was dismissed. The appeal was from the judgment of dismissal.

While the court condemned the practice of placing an innocent person's picture in "a 'rogues' gallery'", it made a distinction as to filing photographs away from the public gaze, and reversed the cause because it was a matter of proof as to whether or not the photographs were placed in the rogue's gallery for public exhibition as was also the character of "the rogues' gallery."

In a subsequent appeal, State ex rel. Mavity v. Tyndall, 225 Ind. 360, 74 N.E.2d 914, 917, appeal dismissed for want of a substantial Federal question, 333 U.S. 834, 68 S.Ct. 732, 92 L.Ed. 1118, 1138, the allegations as to Tyndall's photographs being placed in the rogue's gallery was omitted, and an act of the Indiana Legislature authorizing police to hold photographs, fingerprints etc., was attacked as being in violation of the Fourteenth Amendment to the Federal Constitution and the Indiana Constitution. The act was held constitutional, and among other things, the Court said:

" * * * the safety of the people is the first law and this law must prevail even as against some of the apparent rights of privacy."

In the case before us we are dealing with the custom of the Dallas police department in the discharge of its duty to protect the citizens, and to apprehend law violators. The question presented is: Whether or not, under the record before us, it is shown that the police department in the administration of its affairs has so violated the rights of appellee as to entitle him to the relief prayed for? We think not.

We are in accord with the view expressed in the two following quotations. First: United States v. Kelly, 2 Cir., 1932, 55 F.2d 67, 70, 83 A.L.R. 122. The court was there discussing fingerprints, but we think the principles announced are applicable here. The court said:

"We find no ground in reason or authority for interfering with a method of identifying persons charged with crime which has now become widely known and frequently practiced both in jurisdictions where there are statutory provisions regulating it and where it has no sanction other than the common law.

"The appellee argues that many of the statutes and the decisions in common-law states have allowed finger printing only in case of felonies. But, as a means of identification, it is just as useful and important where the offense is a misdemeanor, and we can see no valid basis for a differentiation. In neither case does the interference with the person seem sufficient to warrant a court in holding finger printing unjustifiable. It can really be objected to only because it may furnish strong evidence of a man's guilt. It is no more humiliating than other means of identification that have been universally held to infringe neither constitutional nor common-law rights. Finger printing is used in numerous branches of business and of civil service, and is not in itself a badge of crime. As a physical invasion it amounts to almost nothing, and as a humiliation it can never amount to as much as that caused by the publicity attending a sensational indictment to which innocent men may have to submit.

" * * * We prefer, however, to rest our decision upon the general right of the authorities charged with the enforcement of the criminal law to employ finger printing as an appropriate means to identify criminals and detect crime."

Second:

"The taking of photographs and fingerprints cannot be regarded as a penalty. If it were, such records could never be made. An accused cannot be punished before trial, nor, in the absence of special statutes, could such a 'penalty' be included in the sentence after conviction. In this regard, taking photographs and fingerprints must be considered the same as any other administrative procedure of the police to which an individual must, at times, be subjected for the common good." 14 Am.Jur. Sec. 133, p. 857.

Because it is our opinion that the trial court erred in granting the injunction, the judgment appealed from is reversed, the injunction dissolved, and judgment is here rendered denying appellee injunctive relief.

Reversed and rendered.

Injunction dissolved.