UNITED STATES of America,

v.

George ROSEN et al., Defendants.

UNITED STATES of America,

v.

George ROSEN and Hair Industry Ltd.,
Defendants.

Nos. 66 Crim. 641, 67 Crim. 280.

United States District Court,
S. D. New York.

May 26, 1972.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for plaintiff; by James W. Rayhill, Asst. U. S. Atty., of counsel.

Irving Anolik, New York City, for defendants.

## OPINION

LEVET, District Judge.

The above-named defendants George Rosen and Herbert Teitelbaum upon notice to the United States Attorney, Southern District of New York, have moved this court for an order directing the United States Attorney to return—

(1) their fingerprints;

(2) their photographs (mug shots); and

(3) any other arrest records

pertaining to the above-named defendants in relation to the above-entitled

criminal actions on the grounds that their charges against each have resulted either in an acquittal or dismissal or both.

The background of the above-named defendants' connection with the above-entitled case is as follows:

1. Indictment 67 Criminal 280, filed April 11, 1967, charged George Rosen and Hair Industry Ltd. with 13 counts of unlawful purchasing and importing raw Asiatic human hair during a period of National Emergency declared by the President without specifically receiving authorization from the Secretary of the Treasury, all in violation of Title 50, App.U.S.C. Section 5(b), and Title 31, Code of Federal Regulations, Sections 500.204 and 500.329. That indictment also charged George Rosen and Hair Industry Ltd. with one count of conspiracy to violate those sections. That indictment was tried before the Honorable Edmund L. Palmieri on March 30, 1970. In that trial both defendants were acquitted on all counts.

2. Indictment 66 Criminal 641, filed August 17, 1966, charged the above-captioned defendants with three counts of unlawful receipt and concealment of unlawfully imported wigs and four counts of unlawful importation of wigs in violation of Title 18, United States Code, Sections 545 and 2. On April 6, 1971 the corporate defendants pleaded guilty to Count One, Count Three, Count Four, Count Five, Count Six and Count Seven before Judge Richard H. Levet and were fined. At the time of sentencing before Judge Richard H. Levet on May 3, 1971, Counts Two, Three, Four and Five were dismissed without objection of the government as to the individual defendants George Rosen and Herbert Teitelbaum.

Hence, (1) defendant Rosen was acquitted in indictment 67 Criminal 280; and (2) the charges against defendants Rosen and Teitelbaum in 66 Criminal 641 were dismissed without objection of the government after the corporate defendants had pleaded guilty and been sentenced.

I am informed by James W. Rayhill, Assistant United States Attorney, in his affidavit sworn to April 5, 1972 that the property of the defendants seized in connection with 67 Criminal 280 has been returned to the defendants; and that an in rem proceeding, 65 Ad. 809, is now pending against the property seized in connection with 66 Criminal 641.

Mr. Rayhill's affidavit states, upon information and belief, that defendant Herbert Teitelbaum was never fingerprinted or photographed.

Consequently, the only remaining issues here relate to:

1. Individual arrest records of Rosen in indictment 67 Criminal 280 and in indictment 66 Criminal 641 and of Teitelbaum in indictment 66 Criminal 641;

2. Photographs of Rosen in each indictment; and

3. Fingerprints of Rosen in each indictment.

Counsel for defendants has specifically conceded that these defendants have experienced no harassment of any kind and have presented no contention that they have lost any job opportunities or suffered any untoward results by reason of the retention of the fingerprints or photographs.

Moreover, there is (1) no indication of the use of Rosen's photos in a Rogues' Gallery; (2) no proof that the arrests of either Rosen or Teitelbaum were a mistake or unlawful; (3) no claim that the United States possessed any fruits of an illegal seizure; (4) no acquittal of either Rosen or Teitelbaum under indictment 66 Criminal 641.

It may be noted that defendant Rosen, President of the corporations pleading guilty for each corporation to the offense in 66 Criminal 641, appeared at the time the corporations entered that plea upon behalf of the respective corporations. (Record in Order of Conviction.) Although obviously it is no evidence of guilt of the individuals, nevertheless, it is not evidence of an acquittal.

■ Furthermore, I must point out that four counts under indictment 66 Criminal 641 were dismissed as to Rosen and Teitelbaum without objection of the government. Defense counsel's attempt to equate dismissal to acquittal is fallacious. An acquittal is a determination on the merits. A dismissal does not necessarily go to a consideration of the merits. An indictment may be dismissed for numerous other reasons which do not determine the merits of the charges. After a dismissal there may be prosecution. United States v. Chase, 372 F.2d 453, 463–464 (4th Cir. 1967); Spriggs v. United States, 225 F. 2d 865, 867–868 (9th Cir. 1955), cert. denied, 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956); United States v. Manetti, 323 F.Supp. 683, 690–691 (D.Del. 1971); United States v. Becker, 221 F. Supp. 950, 954 (W.D.Mo.1963); United States v. Shanahan, 168 F.Supp. 225, 227–229 (S.D.Ind.1959); United States v. Dorrego, 17 F.R.D. 340 (1955); see Rule 48(a), Fed.R.Crim.P. See also Williams v. Snyder, 221 Md. 262, 155 A. 2d 904, 907 (1959); Wight v. Wight, 272 Mass. 154, 172 N.E. 335, 336 (1930).

It is axiomatic that an individual is innocent until proven guilty, although a dismissal is not equivalent to an acquittal. The merits of the indictment were not adjudicated and hence it does not mean that the defendant is innocent of those charges.

The basic question here is whether the mere presence of the arrest records, photos or fingerprints in the government files impinges upon vital rights. The answer demands consideration of the statutory authority, the case law precedent in pertinent cases and a balancing of the equities between the right of privacy of the individual and the right of law enforcement officials to perform their necessary duties.

■ *First*, there is no federal statutory basis for the return of fingerprints or photos of a defendant after acquittal in a United States court. In fact there is a statute that directs the Attorney General to acquire and preserve identification materials and records. It is noteworthy that the word "shall" in said section is not merely an authorization but an imperative direction. Section 534 of Title 28 of the United States Code is as follows:

"§ 534. Acquisition, perservation, and exchange of identification records; appointment of officials

"(a) The Attorney General shall—

"(1) acquire, collect, classify, and preserve identification, criminal identification, crime, and other records; and

"(2) exchange these records with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions.

"(b) The exchange of records authorized by subsection (a) (2) of this section is subject to cancellation if dissemination is made outside the receiving departments or related agencies.

"(c) The Attorney General may appoint officials to perform the functions authorized by this section." (28 U.S.C. § 534.)

It is also significant that Section 534(b) includes a provision for cancellation of this authorization if dissemination of these records or identification is made "outside the receiving departments or related agencies." It would seem that the Congress was aware of this problem and considered this appropriate action. I must assume, therefore, that the law makers have as a matter of public policy determined that the arrest records are to be retained, at least under ordinary circumstances.

*Secondly*, there are no federal court decisions supporting defendants' contention that, under ordinary circumstances without harassment or other unusual circumstances, defendants are entitled to such relief. Three federal cases in particular have discussed this question.

Judge Metzner of this court in an unreported decision said:

"There is no federal statute providing for the expunction of criminal records. However, federal courts have ordered expunction upon a showing of 'extreme circumstances.' Wheeler v. Goodman, 306 F.Supp. 58, 65 (W.D. N.C.1969). Such 'extreme circumstances' have been found to be present where the arrest was unlawful, United States v. Kalish, 271 F.Supp. 968 (D. P.R.1967), or where the police have misused the records to the detriment of the petitioner, Wheeler v. Goodman, supra." United States v. Posnack, 70 Crim. 146 (S.D.N.Y., January 6, 1972) (unreported).

In Wheeler v. Goodman, 306 F.Supp. 58 (W.D.N.C.1969), the court said:

"The general rule is that an equity court should not order expunction unless *extreme circumstances exist*—for example, where the records do not serve to protect society, or *their future misuse is likely*. See United States v. McLeod, 385 F.2d 734 (5th Cir. 1967)." (Emphasis added.) Wheeler v. Goodman, supra, at 65.

Also, in Herschel v. Drya, 365 F.2d 17 (7th Cir.), cert. denied, 385 U.S. 973, 87 S.Ct. 513, 17 L.Ed.2d 436 (1966), Chief Judge Duffy stated:

"Many cases are cited in defendant Wilson's brief showing that authorities throughout the country have held that the retention of finger prints and other arrest records by the police even after discharge, does not violate any constitutional 'right of privacy' of the accused." Herschel v. Dyra, supra, at 20.

In addition, there is a large number of state decisions which have held that apart from a person's public display in the so-called "Rogues' Gallery," an individual is injured only minimally, if at all, by the retention of his record.[1]

1. See People v. Lewerenz, 42 Ill.App.2d 410, 192 N.E.2d 401 (1963); Sterling v. City of Oakland, 208 Cal.App.2d 1, 24 Cal.Rptr. 696 (1962); Kolb v. O'Connor, 14 Ill.App.2d 81, 142 N.E.2d 818 (1957); Roesch v. Ferber, 48 N.J.Super. 231, 137 A.2d 61 (1957); Hansson v. Harris, 252 S.W.2d 600 (Tex.Civ.App. 1952); McGovern v. Van Riper, 140 N.J.Eq. 341, 54 A.2d 469 (1947); State ex rel. Mavity v. Tyndall, 224 Ind. 364, 66 N.E.2d 755 (1946), 225 Ind. 360, 74 N.E.2d 914 (1947), appeal dismissed, 333 U.S. 834, 68 S.Ct. 609, 92 L.Ed. 1118, reh. denied, 333 U.S. 858, 68 S.Ct. 732, 92 L.Ed. 1138 (1948); Fernicola v. Kennan, 136 N.J.Eq. 9, 39 A.2d 851 (1944); State ex rel. Reed v. Harris, 348 Mo. 426, 153 S.W.2d 834 (1941); Bartletta v. McFeeley, 107 N.J.Eq. 141, 152 A. 17 (1930), aff'd, 109 N.J.Eq. 241, 156 A. 658 (1931); Miller v. Gillespie, 196 Mich. 423, 163 N.W. 22 (1917); Hodgeman v. Olsen, 86 Wash. 615, 150 P. 1122 (1915); Downs v. Swann, 111 Md. 53, 73 A. 653 (1909); Mabry v. Kettering, 89 Ark. 551, 117 S.W. 746 (1909); Shaffer v. United States, 24 App.D.C. 417 (1904), cert. denied, 196 U.S. 639, 25 S.Ct. 795, 49 L.Ed. 631 (1905); Molineux v. Collins, 177 N.Y. 395, 69 N.E. 727 (1904); State ex rel. Bruns v. Clausmeier, 154 Ind. 599, 57 N.E. 541 (1900); People ex rel. Joyce v. York, 27 Misc. 658, 59 N.Y.S. 418 (1899). See also Comment, Criminal Law—Constitutional Law—The F.B.I.'s Right to Retain and Disseminate Arrest Records of Persons Not Convicted of a Crime May Be Limited by the First and Fifth Amendments, 46 N.Dame Law. 825, 828 (1971).

These state cases emphasize that in the absence of statutory authority and in the event of a legal arrest, the police should have discretion to decide whether to retain the arrest records, fingerprints or photographs. In Fernicola v. Kennan, 136 N.J.Eq. 9, 39 A.2d 851 (1944), plaintiff was discharged by the Grand Jury. Subsequently plaintiff filed a suit to compel the police to surrender his fingerprints, photographs and body measurements. That court refused plaintiff relief and stated:

"The taking of the fingerprints in the first place and the whole process of arrest of a possibly innocent person are a humiliation to which he must submit for the benefit of society. To the same end, the police are justified in retaining such records, in certain cases, after an acquittal or a failure of the Grand Jury to indict. Sometimes a grand jury dismisses a charge because it seems trivial; sometimes the trial jury must acquit a guilty person because the evidence does not establish guilt beyond

*Finally*, there is the problem of a balancing of equities.[2] The retention of arrest records, fingerprints or photos under certain circumstances may be viewed as an invasion of the right of privacy. This court concludes, however, that even in the situation where a person has been acquitted of charges against him, the arrest records and other materials of identification, no doubt, may be retained *unless*: (1) there is a statute that directs return of such arrest records; (2) the arrest was unlawful; or (3) the record of the arrest is the "fruit" of an illegal seizure. In the situation (1) where the person's arrest records are publicly displayed in a so-called "Rogues' Gallery;" (2) where the person's arrest records are disseminated to potential employers;[3] (3) where there is a showing of harassment by law enforcement officials against the individuals; or (4) where there is a concrete showing that retention of arrest records has made the person more susceptible to suspicion and to injurious investigation when subsequent crimes, particularly of a similar character, are

a reasonable doubt. In every large community are men who have never been convicted of an indictable offense but whose associations and manner of life are such that the police feel reasonably assured that such a one, unless he turn over a new leaf, will eventually be guilty of a serious crime. *If he be lawfully arrested and fingerprinted, the police are justified in keeping the prints for possible use in the future, even though no indictment is found. On the other hand, when a man of good repute has a false charge made against him and is cleared of it, it seems to me that the police should destroy his fingerprints and photograph, or remove them from the Rogues' Gallery. But in the absence of statute, discretion in the matetr belongs to the police.* Since they are responsible for our safety, it is for them to decide whose identification papers will be apt to assist them in the performance of their duty. It is not for the court to make the decision. For these reasons, the bill will be dismissed." (Emphasis supplied.) Fernicola v. Kennan, supra, at 851–852.

See further Hansson v. Harris, 252 S.W. 2d 600 (Tex.Civ.App.1952); Voelker v. Tyndall, 226 Ind. 43, 75 N.E.2d 548, 549–550 (1947); Bridges v. States, 247 Wis. 350, 19 N.W.2d 529 (1945); Note, The Right of Persons Who Have Been Discharged or Acquitted of Criminal Charges to Compel the Return of Fingerprints, Photographs, and Other Police Records, 27 Temple L.Q. 441 (1954); Note, 23 N.Dame Law. 380 (1948); Note, 21 Tulane L.Rev. 289 (1946); Note, 26 Boston U.L.Rev. 526 (1946).

2. Commenting on this balance between the individual and society, Louis Nizer said: "Thus, every lawsuit based upon an alleged infringement of the right of pri-

vacy poses a dilemma in which the court is called upon to find a point where the rights of individuals [to be left alone] and the rights of society [to know the truth and to protect public safety] are in equilibrium." Nizer, The Right of Privacy: A Half Century's Developments, 39 Mich.L.Rev. 526, 529 (1941).

Moreover, the right of privacy is not absolute and under certain circumstances is not superior to the rights of the public. See Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944); Barber v. Time, Inc., 348 Mo. 1199, 159 S.W.2d 291 (1942). See also Warren and Brandeis, The Right of Privacy, 4 Harv.L.Rev. 193 (1890).

3. "A survey by the New York Civil Liberties Union indicated that 75% of New York area employment agencies would not accept for referral an applicant with an arrest record. Sparer, Employability and the Juvenile Arrest Record 5 (Center for the Study of Unemployed Youth, New York University) (pamphlet). Another survey of 75 employers indicated that 66 of them would not consider employing a man who had been arrested for assault and acquitted. Schwartz & Skolnik, Two Studies of Legal Stigma, 10 Social Prob. 133 (1962). At the very least, an arrest record is likely to lead to further investigation; and if it is convenient to fill the job before the investigation is complete, the applicant is effectively denied employment because of his record. See Hess & Le Poole, Abuse of the Record of Arrest Not Leading to Conviction, 13 Crime & Delinquency 494, 496 (1967)." Menard v. Mitchell, 430 F.2d 486, 490–491 n. 17 (D.C. Cir. 1970).

being inquired into,[4] it might be proper to allow injunctive relief restraining such use of the arrest records. See generally Note, Constitutional Law—Right of Police to Retain Arrest Records, 49 N.C.L.Rev. 509, 510–514 (1971); Comment, Criminal Law—Constitutional Law—The F.B.I.'s Right to Retain and Disseminate Arrest Records of Persons Not Convicted of a Crime May Be Limited by the First and Fifth Amendments, 46 N.Dame Law. 825 (1971).

To permit law enforcement officials to retain arrest records, photographs or fingerprints promotes more effective law enforcement. Allowing the police broad discretion in retaining arrest records enables them to utilize more efficiently their facilities for combatting crime. Moreover, arrest records may be vital in curbing the growth of crime. See Comment, Criminal Law—Constitutional Law—The F.B.I.'s Right to Retain and Disseminate Arrest Records of Persons Not Convicted of a Crime May Be Limited by the First and Fifth Amendments, 46 N.Dame Law. 825, 828 (1971); Hoover, Law Enforcement States Its View, 12 Vill.L.Rev. 457 (1967).

However, if law enforcement officials clearly abuse their discretion in the use of retained arrest records and other materials of identification, then the court might well order the return of such records or restrain such use.

 Balancing may be a delicate one and each case must be decided on its specific facts. The situation here is not complex. There is no statute directing return of arrest records. Defense counsel does not contend and, in fact, concedes that there was no improper dissemination of the records, no improper use of the records, and no injuries sustained by the defendants as a result of retention of these records. All defense counsel claims here is that the retention of arrest records, fingerprints and photographs is per se a violation of the defendants' right of privacy. I know of no authority for such an expansive reading of an individual's right. The law has not extended the right of privacy to this awesome scope or degree.

This court has weighed this right of privacy in relation to the interests of society and I must conclude that the law enforcement officials in this situation validly exercised proper authority and discretion in retaining the arrest records, fingerprints and photographs of the defendants.

The motion of Rosen and Teitelbaum in all respects must be denied.

So ordered.

4. There are a number of other detriments to a defendant that may arise from retention of arrest records. Chief Judge Bazelon in Menard v. Mitchell, 430 F.2d 486 (D.C.Cir. 1970), said:

"An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise their discretion to bring formal charges against an individual already arrested. Arrest records have been used in deciding whether to allow a defendant to present his story without impeachment by prior convictions, and as a basis for denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender." (Footnotes omitted.) Menard v. Mitchell, supra, at 490–491.

See also E. Williams, Modern Law Enforcement and Political Science 105–109 (1967); W. LaFave, Arrest 287–289 (1965).

Furthermore, if an arrest record is made known, there can be serious injury to one's reputation and to one's family. See Breitel, Controls in Criminal Law Enforcement, 27 U.Chi.L.Rev. 427 (1960).