This bill was filed against the commissioner of public safety, the chief of police and the board of commissioners of the city of Hoboken, to compel them to surrender to the complainant the photographs, bertillon measurements and fingerprints of the complainant, which had been made by the police of Hoboken.
Complainant has been a resident of Hoboken for many years, prominent in business and political affairs of that municipality. Among other activities, he was the president and principal stockholder of the Terminal Printing and Publishing Company. On February 10th, 1928, police officers of Hoboken, armed with a search warrant, went to the plant of the printing company and there found and seized several thousand lottery tickets and other printed matter relating to lotteries, as well as the plates with which the printing was done. Immediately after the seizure, Lieutenant *Page 142 
Scott, of the police department, swore to a complaint charging Mr. Bartletta and three others with possessing papers, documents,c., pertaining to a lottery in violation of section 58 of the Crimes act of 1898. A warrant was issued upon this complaint by the recorder of the city. That same evening, Mr. Bartletta, hearing of the raid and of the issuance of the warrant, went to police headquarters accompanied by his lawyer. There he was arrested and was immediately taken to the room in which prisoners were customarily finger-printed. He thrust his hands into his pockets and declared that the prints of his fingers should not be taken. After some discussion he submitted, under protest, and upon the advice of his counsel, and the officer in charge made the fingerprints. He was next photographed over his protest. Mr. Bartletta was then taken before the recorder and released on bail to await the action of the grand jury. Four days after his arrest he filed his bill of complaint in this suit.
One other factor in the case should be mentioned, although it is not alleged in the bill. The complainant and the defendant Bernard M. McFeeley had been political allies in Hoboken but they had quarreled and had been opposing each other with great bitterness for some months before the arrest of Mr. Bartletta. Mr. McFeeley, at the time of the arrest, was commissioner of public safety and had charge of the police department. He was present at police headquarters, part of the time at least, while Mr. Bartletta was being fingerprinted and photographed and seemed well satisfied with the plight of his enemy. It does not appear, however, that he caused the complaint to be made against Mr. Bartletta or caused him to be photographed and fingerprinted. The officers who took the photographs and made the prints testified that they acted pursuant to the instructions of an inspector of the department, from whom they usually received orders in such matters.
Counsel for the complainant contends that it is unlawful for the police in any case to photograph or fingerprint an accused person before trial and conviction except with the consent of the prisoner. I am convinced that this is not the *Page 143 
law. The police are charged with the duty of preventing crime, apprehending criminals and gathering evidence upon which they may be brought to trial. In the performance of this duty, they may use any apt and reasonable means which do not invade the rights of the accused or of other persons. Fanciful rights of accused persons cannot be allowed to prevent the functioning of the police and so to jeopardize the safety of the public. Let me assume a not infrequent case: Fingerprints are found at the scene of a burglary; a suspect is captured and placed on trial. If the police are prohibited from taking his fingerprints they will be unable to present to the jury evidence as to whether or not he is the person who made the prints in the house where the burglary was committed. Again, let me suppose the trial of a defendant charged with receiving stolen goods; prior convictions of similar offenses are admissible in evidence. Unless the police are allowed to fingerprint the accused before trial, they may be unable to show that he is the same person who was convicted on former occasions and whose fingerprints are already in the possession of the public authorities. Again, a prisoner escapes from jail before trial, or having been released on recognizance, fails to appear when called. His recapture will be much facilitated if the police have taken the precaution to fingerprint and photograph him. Such police measures are a strong protection for the innocent defendant; they may prove that he was not the person present at the time of the burglary and that he is not the person who has been previously convicted under the same name.
The right of the police to fingerprint and photograph is powerfully supported by the argument from convenience and from the public interest in permitting the courts to learn the truth of the questions at issue. This right is also upheld by custom. The police in the large cities of this state and throughout the country for half a century have measured, photographed or fingerprinted prisoners before trial; and their authority to do so has been seldom questioned and, so far as I can learn, only once denied by the judgment of a court. *Page 144 
There is a close analogy between searching the person of a prisoner and fingerprinting him. Both acts have for their purpose the obtaining of evidence against him; in both is his person subjected to some handling beyond what is required for preventing escape. The right to search a prisoner is generally upheld.8 R.C.L. 197 § 193.
In State v. MacQueen, 69 N.J. Law 522; 55 Atl. Rep. 1006,
Mr. Justice Pitney said: "And it would seem that after arrest made, the person of the accused may properly be examined without a search warrant in order to find evidence of his guilt and that such an examination would not be deemed an unreasonable search." In State v. Mausert, 88 N.J. Law 286; 95 Atl. Rep. 991, the court of errors and appeals held that the police upon making an arrest might seize proofs of guilt found within the control of the accused.
If the police have no right to fingerprint and photograph a person before conviction, they would seem to be equally without such right after conviction. By conviction for crime, the convict becomes liable only to those penalties which are prescribed by law. No statute and no rule of the common law imposes as part of the penalty that the convict must submit to be photographed and fingerprinted.
There is a suggestion in State v. Cerciello,86 N.J. Law 309; 90 Atl. Rep. 1112, that the police cannot lawfully fingerprint an accused person against his will. Mr. Justice Minturn, writing the opinion, said that State v. Miller,71 N.J. Law 527, "is also authority for the proposition, generally conceded by the trend of judicial authority, that the condition upon which such testimony is received is that, so far as the defendant is concerned, he shall not have involuntarily contributed to its production so as to cause him, in legal effect, to serve as a witness against his will, to furnish testimony to convict himself under the rule adopted in this state as part of the common law. State v. Zdanowicz,69 N.J. Law 619; 55 Atl. Rep. 743. We do not find from an inspection of the testimony here that this legal safeguard was contravened in the case of this defendant." The question before the court in theCerciello Case was whether the trial *Page 145 
court had erred in permitting testimony of the similarity of fingerprints found upon a hatchet with which a murder had been committed and the fingerprints of the defendant made after his arrest. The court of errors and appeals ascertained that the fingerprints of the defendant were voluntarily made by him and hence there was no occasion for the court to consider whether the evidence would have been admissible if the prints had been forcibly obtained or whether the police were justified in forcibly taking the prints. The passage quoted above does not establish the law as to fingerprinting. Neither the Miller Case
nor the Zdanowicz Case is authority for the proposition that fingerprint evidence forcibly obtained is inadmissible.
Only one case has been called to my attention in which it is definitely held that the fingerprinting of an accused person before conviction is unlawful. Hawkins v. Kuhne,137 N.Y. Supp. 1090; affirmed, without opinion, 208 N.Y. 555. On the other hand, Schulman v. Whitaker (La.), 42 So. 227; 7L.R.A. (N.S.), 274; Downs v. Swann (Md.),73 Atl. Rep. 653; 23 L.R.A. (N.S.) 739; State v. Clausmier (Ind.),57 N.E. Rep. 541; 50 L.R.A. 73, and Shaffer v. UnitedStates, 24 App. D.C. 417, hold to the contrary.
The next question is this: In what cases can the police photograph and fingerprint a prisoner? The principle involved is the same, if the question is: What prisoners may they search? Whether any certain prisoner is to be fingerprinted and photographed is an administrative question to be determined by the head of the police department making the arrest, or by those subordinates to whom he may delegate the decision. The police department have the responsibility of the safety of the people and they must be given the necessary discretion to enable them successfully to assume this responsibility. When an arrest is made, the police frequently are unfamiliar with the record of their prisoner and one of the purposes of circulating his description among other police departments is to learn whether or not he is a first offender. No rule can be laid down to guide the police so that they *Page 146 
may know whether or not the prisoner in their hands is one whom they had best watch carefully in the future or is one who is liable to escape before trial. No distinction can be made by the court between prisoners charged with high misdemeanors and those charged with misdemeanors. The fingerprinting of the latter is frequently as important as the fingerprinting of the former. Of course, in these as in other matters, the police must not be actuated by malice.
The complainant urges that the police in his case acted maliciously. The presumption in favor of proper motives is strong. If it were not for the enmity which existed between Mr. Bartletta and Mr. McFeeley at the time of the former's arrest, the propriety of the action of the police would seem clear. The printing company, of which Mr. Bartletta was president, was a small concern with $16,000 capital and a dozen or so employes. It had been printing lottery tickets for about two years. The innocence of Mr. Bartletta arose from the unusual circumstances that he went to the printing company only a couple of times a month and while there did not look over the work being done and did not inquire into the sources of the revenue of the company and so did not know of the possession of the lottery tickets. The manager of the plant, Mr. Bado, gave to Mr. Bartletta periodically, reports of the business done but did not specify the kind of work from which the income arose. The making of the charge against Mr. Bartletta was fully justified by the facts in the possession of the police. The crime of which he was accused is a high misdemeanor for which he might have been sentenced upon conviction to not more than seven years at hard labor in the state prison. If he had known himself to be guilty and feared that the police had proof of his guilt, the temptation for him to forfeit whatever bail he might be released on would have been great.
The enmity which Mr. McFeeley bore Mr. Bartletta must, of course, be considered. As noted above, however, there is no evidence that he ordered the fingerprinting or photographing, although he was present and could have stopped it if he so desired. His responsibility for this action of the police *Page 147 
must be assumed. But if the action of the police was proper and reasonable, as I find it to be, it is not made unlawful by the added factor that it gave personal satisfaction to Mr. McFeeley. I find that the fingerprinting, measuring and photographing of complainant was not actuated by malice and was lawful.
The bill of complaint should be dismissed.