## UNITED STATES v. KELLY.

### No. 135.

Circuit Court of Appeals, Second Circuit.

Jan. 18, 1932.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Emanuel Bublick, Asst. U. S. Atty., of Brooklyn, N. Y. and Norman J. Morrison, Special Asst. to Atty. Gen., of counsel), for the United States.

Arthur A. Kestler, of Brooklyn, N. Y. (Anthony A. Marcell, of Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

One Mortimer Kelly was arrested by prohibition agents in the Eastern district of New York upon a charge of having sold to the agents one quart of gin. On the day of the arrest, and before arraignment before a United States commissioner, he was told by the agents that his finger prints must be taken for the use of the Bureau of Prohibition, and that, if he did not permit the finger prints to be taken, they would be taken by force. Kelly submitted and permitted his finger prints to be taken; whereupon he filed a petition in the District Court setting forth the foregoing facts and praying that the finger prints should be returned. The District Court ordered the United States attorney, the prohibition administrator, and whoever should have possession of the finger prints to return them. From that order the United States took the present appeal.

The District Judge delivered an opinion in which he stated that the right to take finger prints in the case at bar did not exist because of the absence of a state or federal statute providing for it and because finger printing subjected "a possible misdemeanant before trial and conviction" to "unnecessary indignity."

The government contends that there is ample authority supporting finger printing upon arrest irrespective of statute, that finger printing is necessary to ascertain whether a defendant has been previously convicted so as to plead the prior conviction as provided in section 29, title 2, of the National Prohibition Act (27 USCA § 46), and that finger printing is not an infringement of constitutional rights.

Such means for the identification of prisoners so that they may be apprehended in the event of escape, so that second offenders may be detected for purposes of proper sentence where conviction is had, and so that the government may be able to ascertain, as required by section 29, title 2, of the National Prohibition Act, whether the defendant has been previously convicted, are most important adjuncts of the enforcement of the criminal laws.

Any restraint of the person may be burdensome. But some burdens must be borne for the good of the community. Crowley v. Christensen, 137 U. S. at page 89, 11 S. Ct. 13, 34 L. Ed. 620; Jacobson v. Massachusetts, 197 U. S. at page 26, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; Molineux v. Collins, 177 N. Y. at page 399, 69 N. E. 727, 65 L. R. A. 104. The slight interference with the person involved in finger printing seems to us one which must be borne in the common interest.

Arrest upon probable cause and search of the person in connection with the arrest and seizure of evidences of crime have long been allowed. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; People v. Chiagles, 237 N. Y. 193, 142 N. E. 583, 32 A. L. R. 676. Yet the person arrested and thus humiliated may be entirely innocent. The New York Court of Appeals in People v. Gardner, 144 N. Y. 119, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741, held it lawful to take a prisoner accused of murder before his dying victim to be identified. The same court in People v. Van Wormer, 175 N. Y. 188, 67 N. E. 299, sustained the action of the public authorities in taking the shoes from the defendants, after their arrest on a charge of murder, and placing them in the foot marks which led to the house of the deceased in new fallen snow. And in Holt v. United States, 218 U. S. at page 252, 31 S. Ct. 2, 6, 54 L. Ed. 1021, 20 Ann. Cas. 1138, the Supreme Court regarded testimony that a prisoner had been compelled to put on a blouse which was found to fit him as competent evidence that the blouse belonged to him. Justice Holmes

said that " * * * the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would' forbid a jury to look at a prisoner and compare his features with a photograph in proof."

Finger printing seems to be no more than an extension of methods of identification long used in dealing with persons under arrest for real or supposed violations of the criminal laws. It is known to be a very certain means devised by modern science to reach the desired end, and has become especially important in a time when increased population and vast aggregations of people in urban centers have rendered the notoriety of the individual in the community no longer a ready means of identification.

The Maryland Court of Appeals held that it was lawful, though before conviction, to photograph and measure under the Bertillon system a person arrested on a felony charge. Downs v. Swann, 111 Md. 53, 73 A. 653, 23 L. R. A. (N. S.) 739, 134 Am. St. Rep. 586. In Maryland no statute existed authorizing such means of identification. The Supreme Court of Indiana reached a similar conclusion in State ex rel. Bruns v. Clausmeier, 154 Ind. 599, 57 N. E. 541, 50 L. R. A. 73, 77 Am. St. Rep. 511, and O'Brien v. State, 125 Ind. 38, 25 N. E. 137, 9 L. R. A. 323, and so did the Supreme Court of Arkansas in Mabry v. Kettering, 92 Ark. 81, 122 S. W. 115. The Court of Appeals of the District of Columbia is in accord. Shaffer v. U. S., 24 App. D. C. 417. The Court of Chancery of New Jersey in Bartletta v. McFeeley, 107 N. J. Eq. 141, 152 A. 17, held only a year ago, and in the absence of a statute, that a prisoner who had been arrested for possessing papers pertaining to a lottery was lawfully subjected to photographing, finger printing, and measurement under the Bertillon system. To the same effect is the opinion of the New York Court of General Sessions in People v. Sallow, 100 Misc. Rep. 447, 165 N. Y. S. 915, and of the Supreme Court of the District of Columbia in United States v. Cross, 9 Mackey (20 D. C.) at page 382.

It is true that the Appellate Division of the New York Supreme Court in Hawkins v. Kuhne, 153 App. Div. 216, 137 N. Y. S. 1090, affirmed 208 N. Y. 555, 101 N. E. 1104, may be thought to have held that photographing and measuring a prisoner before conviction were unlawful in the absence of a statute. But the opinion was in a case where the arresting officers refused to take the prisoner before a magistrate for a hearing prior to being photographed and measured. After photographing and measurement he was taken to court and held only for vagrancy and admitted to bail. Thereupon he was rearrested on the original charge of embezzlement based upon a cable from the Governor of Porto Rico under which the magistrate had refused to hold him after the first arrest. The photographing and measuring in connection with the first arrest were held by the Appellate Division to constitute an unlawful assault, and the imprisonment under the second arrest to amount to false imprisonment by the officer ordering the acts to be done. Justice Woodward in the Appellate Division stated that the counsel for the appellant did not question that the taking of the plaintiff's picture before the conviction was an illegal act and that an assault was thereby committed, citing with approval Justice Burr's opinion at Special Term in Gow v. Bingham, 57 Misc. Rep. 66, 107 N. Y. S. 1011, in which it was said that photographing and finger printing prior to conviction were, in the absence of legislative authority, an unlawful invasion of personal rights. Three out of the seven judges of the Court of Appeals which affirmed a judgment awarding damages to the plaintiff did so upon the opinion of Justice Woodward; but the remaining four only concurred in the result. The argument on appeal seems to have somewhat turned on whether the particular police officer who gave the various orders was personally responsible. The liability for the photographing and measuring may well have depended upon the unreasonableness of these acts at a time when the prisoner was demanding an instant hearing in the hope of obtaining a discharge without being submitted to any indignities. But, in any event, the case as submitted was upon the concession by defendant's counsel that "the taking of the plaintiff's picture before conviction was an illegal act," Hawkins v. Kuhne, 153 App. Div. 219, 137 N. Y. S. 1090, so that the point involved here was not properly before the court. As for the opinion of Justice Burr in Gow v. Bingham, 57 Misc. Rep. 66, 107 N. Y. S. 1011, his remarks about measurement and finger printing, were clearly not necessary to his decision which was only that a writ of mandamus did not lie to compel the Police Department to destroy the photographs, records, and impressions taken from the prisoner.

But the New York Law of Criminal Procedure, though its statute only provides for taking "thumb prints" in cases where the person arrested is charged with a felony or with certain specified misdemeanors (Code of Criminal Procedure, § 940), does not regulate the methods which federal officials may employ for securing identification while they hold prisoners in custody. Section 1014 of the United States Revised Statutes (18 USCA § 591) as the trial judge said in the case at bar, states in effect that "an offender against any law of the United States may be arrested, imprisoned and bailed 'agreeably to the usual mode of process against offenders in such state.'" We said in Marsh v. United States (C. C. A.) 29 F.(2d) 172 at page 174, that section 1014 "relates only to the practice when a warrant issues," and none seems to have issued here. But, aside from this, the section does not in terms cover the matters we are considering, and it has been construed rather strictly. Marsh v. United States (C. C. A.) 29 F.(2d) at page 174; Roth v. United States (C. C. A.) 294 F. 475; United States v. Powlowski (D. C.) 270 F. 285; Cohen v. United States (C. C. A.) 214 F. at page 28; United States v. Kerr (D. C.) 159 F. 185.

We find no ground in reason or authority for interfering with a method of identifying persons charged with crime which has now become widely known and frequently practiced both in jurisdictions where there are statutory provisions regulating it and where it has no sanction other than the common law.

The appellee argues that many of the statutes and the decisions in common-law states have allowed finger printing only in case of felonies. But, as a means of identification, it is just as useful and important where the offense is a misdemeanor, and we can see no valid basis for a differentiation. In neither case does the interference with the person seem sufficient to warrant a court in holding finger printing unjustifiable. It can really be objected to only because it may furnish strong evidence of a man's guilt. It is no more humiliating than other means of identification that have been universally held to infringe neither constitutional nor common-law rights. Finger printing is used in numerous branches of business and of civil service, and is not in itself a badge of crime. As a physical invasion it amounts to almost nothing, and as a humiliation it can never amount to as much as that caused by the publicity attending a sensational indictment to which innocent men may have to submit.

Finger printing may also be justified in prohibition cases as a means of ascertaining whether a defendant has been previously convicted, so that the prior conviction can be pleaded as required in section 29, title 2, of the National Prohibition Act. Where a statute imposes a duty, it carries by implication every reasonable means necessary to effectuate the desired end. City of New York v. Sands, 105 N. Y. 210, 11 N. E. 820; Dooley v. Pennsylvania R. Co. (D. C.) 250 F. 142. We prefer, however, to rest our decision upon the general right of the authorities charged with the enforcement of the criminal law to employ finger printing as an appropriate means to identify criminals and detect crime.

It should be added that all United States attorneys and marshals are instructed by the Attorney General not to make public photographs, Bertillon measurements or finger prints prior to trial, except when a prisoner becomes a fugitive from justice, and are required to destroy or to surrender to the defendant all such records after acquittal or when the prisoner is finally discharged without conviction. There is therefore as careful provision as may be made to prevent the misuse of the records and there is no charge of any threatened improper use in the present case.

Upon the proofs submitted we find no justification for ordering the return of the finger prints of Mortimer Kelly, and the order directing such return is accordingly reversed, with direction to the District Court to dismiss the petition.