24 Cal.Rptr. 696]

[Civ. No. 19732.   First Dist., Div. Three.   Sept. 28, 1962.]

GLADYS STERLING, Plaintiff and Appellant, v. CITY OF OAKLAND et al., Defendants and Respondents.

(1)

Haet, Dominguez, Speiser & Williams, Goldstein, Brann & Stern and Franklyn K. Brann for Plaintiff and Appellant.

Hilton J. Melby, City Attorney, and Frederick M. Cunningham, Deputy City Attorney, for Defendants and Respondents.

DEVINE, J.—Plaintiff, appellant, brought this action seeking an injunction to prevent defendants, the City of Oakland and its chief of police, from keeping on file her photograph and fingerprints, and seeking declaratory relief to determine if defendants are entitled to maintain a record of her arrest and to keep the said photograph and fingerprints, following dismissal of misdemeanor charges which had been made against her. The pleading in respect of the injunction contains allegations that "by reason of said police record plaintiff is more liable to arrest by police officers on the grounds that she has a prior arrest record and said factor is considered by police officers in making arrests of individuals; that in the event plaintiff is ever arrested again or charged and convicted of a crime, the fact that the Oakland police records show she has been arrested previously will be used by the court in determining what sentence to impose." There is no allegation that the fingerprints and photograph would

be disseminated generally, or at all, and there is no allegation that the photograph would be exhibited in any way to the public, or that it would be available for public inspection. Demurrer was overruled, but at trial the court sustained objection to testimony offered by plaintiff, on the ground that the complaint does not state a cause of action, and rendered judgment in favor of defendants on that ground. Plaintiff appeals from the judgment.

The facts stated in this paragraph are those alleged in the complaint. On September 21, 1957, Mrs. Sterling was a passenger in a Yellow Cab driven by defendant Oran Sheppard. Upon arriving at her home she offered to pay her $1.90 fare with a $20 bill. The driver refused this tender, saying that plaintiff should know better than to pay with a $20 bill. Sheppard then stated that he would drive somewhere in order to get change, but that he would charge the additional fare. Plaintiff refused to do so, but Sheppard still proceeded to drive to a café at Seventh and Pine Streets in Oakland (about three blocks from plaintiff's residence) and refused to allow plaintiff to leave the cab until the additional fare was paid. When plaintiff refused to pay, Sheppard called the Yellow Cab Company office and the police officers were summoned. A citizen's arrest was made by Sheppard.

While being held by the police officers, plaintiff had to submit to fingerprinting and photographing, and a record was made of the arrest. Plaintiff seeks to have the prints and photograph returned or destroyed. On October 24, 1957, the charges against plaintiff (violation of section 5-14.181 of the Oakland Municipal Code [refusal to pay taxicab fare]) were dismissed because of the failure of Oran Sheppard to appear in court to testify.

The cab company was a party defendant to this action, in counts charging false imprisonment and malicious prosecution, and a jury returned verdicts on both counts for compensatory and punitive damages, although the awards were small in amount. Plaintiff also sued nine police officers; verdict was in their favor. There is no appeal from the judgment for plaintiff against Yellow Cab Company nor from judgment in favor of defendants, the police officers.

Appellant contends that the police had no right to take her fingerprints and photograph upon charge of the misdemeanor, and that, even if they had such right, they must, on demand, return or destroy them after her dismissal.

There is but little reference to fingerprints and photographs

**4**

of offenders or suspected offenders against the law, in this state, except in the statutes relating to records of convicted felons, certain offenders against children, fugitives from justice, and possessors of various kinds of contraband, in Penal Code sections 11100-11112. Regarding other persons arrested or accused, there is no specific statute. In 1959, subdivision 21 was added to section 7 of the Penal Code, and it reads: "To 'book' signifies the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts following an arrest." In the same year, section 851.5 of the Penal Code was enacted, giving any person arrested the right to make a telephone call immediately *after he is booked,* under certain circumstances (this was amended to two calls, and the circumstances were somewhat changed by amendment in 1961), with the implication that recordation, photographing and fingerprinting, or any one or more of these acts, would have been done by the arresting or custodial officers.

In general, fingerprinting and photographing of accused persons, even before conviction, has been held valid in the absence of statute, upon the grounds of a means of identifying the accused and of assisting in the recapture in event he escapes or flees before trial. (*Downs* v. *Swann,* 111 Md. 53 [73 A. 653, 134 Am.St.Rep. 586, 23 L.R.A. N.S. 739] ; *State* ex rel. *Bruns* v. *Clausmeier,* 154 Ind. 599 [57 N.E. 541, 77 Am. St.Rep. 511, 50 L.R.A. 73] ; *Bartletta* v. *McFeeley,* 107 N.J. Eq. 141 [152 A. 17] ; *People* v. *Sallow,* 100 Misc. 447 [165 N.Y.S. 915] ; *United States* v. *Cross,* 20 D.C. (9 Mackey) 365.)

More important, however, to the decision in the case than the subject of the right to take fingerprints and photographs at all, is the question whether fingerprints and photographs, once taken, must be delivered to the accused, on demand, when the accused is dismissed. We are of the opinion that plaintiff's complaint does not state a cause of action, and that the judgment should be affirmed. We base our decision chiefly upon the omission of the Legislature of this state to prescribe any duty to return photographs or fingerprints, and upon certain statutory relief which does exist in this state; but we find some support for the judgment in the decisions of other states.

Addressing ourselves first to the decisions in other states, we find that there are but few; on the whole, however, they tend to support the judgment herein. The cases cited by appellant are given herein, with brief statements of the reasons

why we do not deem them persuasive in the case before us: (1) Two Louisiana cases decided in 1905 and 1906, *Itzkovitch* v. *Whitaker,* 115 La. 479 [39 So. 499, 112 Am.St.Rep. 272, 1 L.R.A. N.S. 1147], and *Schulman* v. *Whitaker,* 117 La. 704 [42 So. 227, 8 Ann.Cas. 1174, 7 L.R.A. N.S. 274], in which placing of pictures in a "rogues' gallery" before trial was held enjoinable. These cases were decided over 50 years ago, and had to do with "rogues' galeries" as they then existed. (2) *State* ex rel. *Reed* v. *Harris* (1941) 348 Mo. 426 [153 S.W.2d 834], in which it was held that a cause might be stated (although it was not yet stated) against circularization of fingerprints and photographs of an alleged traffic violator. The case had to do with circularization, not merely retention. (3) *Miller* v. *Gillespie* (1917) 196 Mich. 423 [163 N.W. 22, L.R.A. 1917E 774], in which the court held that the arrest report need not be returned on acquittal, and there was dictum taken from the Louisiana cases, *supra,* on placing of photographs in a rogues' gallery . The holding of the case, as distinguished from the dictum, had nothing to do with the matter before us. (4) *State* ex rel. *Mavity* v. *Tyndall* (1946) 224 Ind. 364 [66 N.E.2d 755], appeal dismissed 333 U.S. 834 [68 S.Ct. 609, 92 L.Ed. 1118], rehearing denied 333 U.S. 858 [68 S.Ct. 732, 92 L.Ed. 1138], in which it was held that plaintiff stated a cause of action by alleging that although gaming charges against him had been dismissed, his photograph, with a number across the body, was to be displayed in a rogues' gallery for public exhibition. There is no such allegation in our case. (5) *United States* v. *Kelly* (1932) 55 F.2d 67 [83 A.L.R. 122], in which the court recognized the right of taking fingerprints without statute, and stated that the court was informed it was the practice of the Federal Bureau of Investigation to return them in event of acquittal. This, too, probably was dictum and, besides, the information related to a practice existing in 1932.

On the other hand, it was held in the *Mavity* case, *supra,* at page 762 [66 N.E.2d], that if photographs are filed away from public gaze, and not published or exhibited in a public place called a "rogues' gallery," they are in the same category as filed fingerprints, and the complainant was not entitled to their return; and in *State* ex rel. *Mavity* v. *Tyndall* (1947) 225 Ind. 360 [74 N.E.2d 914], appeal dismissed 333 U.S. 834 [68 S.Ct. 609, 92 L.Ed. 1118], rehearing denied 333 U.S. 858 [68 S.Ct. 732, 92 L.Ed. 1138], wherein allegations relating to the rogues' gallery had been omitted from the complaint, judg-

ment sustaining demurrer was affirmed. In *Kolb* v. *O'Connor,* 14 Ill.App.2d 81 [142 N.E.2d 818], the court pointed out, at page 823 [142 N.E.2d], that the rogues' gallery as it had existed in Louisiana seems to have been a place where the pictures were publicly exhibited, and reversed a judgment which had decreed return of the photographs where the evidence showed that the practice was merely to keep photographs in the police files.

There is no statute in this state on the subject of return or destruction of photographs or fingerprints of persons who have been accused of crime, either misdemeanor or felony, and who have been acquitted on trial or dismissed without trial. A bill to require return of photographs and fingerprints, on demand, to anyone who has been arrested, after determination of the criminal action or proceeding in his favor, was introduced in the Assembly in 1961, and was referred to the Committee on Criminal Procedure. There it was amended to limit the requirement of return to cases of citizen's arrest, and provision was made for a fee of not more than $25 for administration costs, payable by the returnee. The amended bill (Assembly Bill 1211) was reported out of committee, but that was the last of its history.

Thus, plaintiff can rely on no statute, and the failure of the Legislature to enact the proposed bill, in one form or another, is some evidence that the Legislature does not consider it necessary or proper or expedient to enact such legislation.

We deem the subject matter to reside principally within the legislative domain. In giving, in this paragraph, some of the reasons which lead us to this conclusion, we do not mean to intimate that a statute should or should not be enacted, but to indicate that the subject belongs primarily to the lawmakers. The magnitude of the task of returning fingerprints and photographs on demand, and of making certain that they are returned to the correct person, is a matter for legislative consideration. As to fingerprints, there may be considered the facts that fingerprinting has been so common that it seems that by 1956 over 70,000,000 persons' fingerprints had been recorded in the Federal Bureau of Investigation, and that fingerprinting in itself, apart from arrest, is no longer considered an indignity (see Everett, *New Procedures of Scientific Investigation and the Protection of the Accused's Rights* (1959) Duke L.Rev. 45) ; and that, although the taking of the fingerprints of a person arrested who is wholly innocent may have been of more or less mortification, the filed

prints are decipherable only by experts. (See De Angelis, *The Right of Persons Who Have Been Discharged or Acquitted of Criminal Charges to Compel the Return of Fingerprints, Photographs, and Other Police Records,* 27 Temple L.Q. 441, 449.) Photographs, of course, are in a somewhat different category, but here, too, the filing may be so handled as to prevent disclosure. Whether they are generally in danger of falling into the view of others than the custodians, or are well guarded, is a matter which the Legislature, if it desires, can determine. ▆▆ Although particular cases may be presented in which privacy would be so threatened, by indiscriminate or injudicious display of a photograph by custodians of records, and particularly of photographs, as to justify action by a court of equity, there is nothing in the pleading in this case which is of that nature.

If the Legislature should come to the conclusion, in general, that there should be delivery of the items, there would still be the matter of possible classification according to the types of offense charged, what demand would be necessary, and other details requiring the particularity of a statute.

A final consideration is that the Legislature has enacted statutes for the protection of acquitted or dismissed persons. In 1961, the Legislature added section 11116 to the Penal Code, which provides in part that: "Whenever a criminal complaint or accusation is filed in any superior, municipal or justice court, the clerk, or, if there be no clerk, the judge of that court shall furnish a report of the disposition of such case to the sheriff, police department or other law enforcement agency primarily responsible for the investigation of the crime alleged, in a form and manner prescribed or approved by the Bureau of Criminal Identification and Investigation." Thus, a record of the fact that the complaint against plaintiff was dismissed has been made. Indeed, the photograph and fingerprints on file with the police department will be a permanent means by which plaintiff can establish her identity as the person who was dismissed. Although she may personally desire to have the records returned to her, it may well be that the Legislature has decided, not only for the public interest, but for her own as well, that the record made in compliance with section 11116 is reinforced by the retention in the police files of the identifying picture and prints.

▆▆ We do not believe any weight must be given to the theory that the police would be more likely to arrest plaintiff in the future for the rather trivial offense with which she was

charged because of this incident, when the case terminated so favorably to her; and we cannot place any weight at all on the proposition that a judge might be inclined to impose a heavier sentence for any other offense which plaintiff might commit.

As evidence of her vindication, plaintiff can point not only to evidence of her exoneration in the record, made pursuant to section 11116, but also to the verdicts of the jury and to the judgment which she was awarded.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.