228 So.2d 132 (1969)
E. Wilson PURDY, As Sheriff and Director of the Public Safety Department of Dade County, Florida, Appellant,
v.
Adrian MULKEY, J.F. McCracken As Clerk of the Criminal Court of Record for Dade County, Florida, Jack Turner, Edward S. Klein, Carling Stedman, and Paul Baker, As Judges of the Criminal Court of Record of Dade County, Appellees.
No. 69-277.
District Court of Appeal of Florida. Third District.
November 12, 1969.
*133 Thomas C. Britton, County Atty., and Joseph D. Komansky, Asst. County Atty., for appellant.
Richard E. Gerstein, State's Atty., and Charles D. Edelstein, Asst. State's Atty., Ralph H. Bearden, Jr., Miami, and Hubbard & Hickey, Coral Gables, for appellees.
Before PEARSON, C.J., and CHARLES CARROLL and BARKDULL, JJ.
CHARLES CARROLL, Judge.
Adrian Mulkey, the appellee, was arrested in September of 1959, and was informed against, charged with the crime of attempt to commit petit larceny, a misdemeanor. Upon arrest he was fingerprinted and photographed by the sheriff, and *134 copies of the fingerprints were sent to the federal bureau of investigation. In so doing the sheriff acted under the authority and direction of a statute then in effect (§ 30.31 Fla. Stat. 1959) which read as follows:[1]

"Fingerprinting persons charged with crime. 
"(1) It is hereby made the duty of the sheriffs of the state, when in their opinion it is necessary to the protection of the public, to fingerprint all persons charged with or convicted of any criminal offense.
"(2) The sheriffs of the respective counties are hereby required to furnish a copy of all fingerprints made by them to the federal bureau of investigation."
Mulkey pled guilty, when arraigned in the criminal court of record of Dade County, following which, on November 19, 1959, the court entered an order withholding adjudication of guilt and placing him on probation for six months, and at the end of the period of probation ordered Mulkey released from the probation and discharged him from the cause.[2]
Eight years later, on January 23, 1968, Mulkey filed a petition in the circuit court seeking to have his fingerprint record and photographs expunged, and to have the court file relating to the criminal case sealed. Originally the only defendant named in his petition was the clerk of the criminal court of record. Later an amended petition was filed, repeating the allegations, and adding the judges of the criminal court of record as defendants. The sheriff applied for and was granted leave to intervene as a defendant, and filed his answer.
In his amended petition Mulkey alleged that he had pled guilty to the offense for which he was arrested in 1959, and recited the action of the court in withholding adjudication of guilt and placing him on probation, and the subsequent order releasing him from probation and discharging him from the cause after expiration of the probation period. He alleged that he was 17 years of age at the time of the offense; that he graduated from high school, had obtained certain academic credits through attendance at a junior college, had served a tour of duty in the armed forces of the United States, and that in the intervening years he had "redeemed himself." The amended petition also alleged that "there will be no objection or impediment to the enforcement of an order expunging the aforesaid record by the public safety department of Dade County." In his answer to the amended petition, the sheriff denied that allegation.
Aside from the foregoing allegations, the only matter submitted by the amended petition as a basis or ground for expunging the records was that the petitioner had made an application to Pan American World Airways for a job, in which he had informed them of the said arrest and its disposition by the court, and that he had been informed by Pan American that the company would not employ him because of the existence of the records of the offense, *135 but that if the records were expunged they would hire him.
Both the petitioner and the sheriff filed motions for summary judgment. Petitioner filed an affidavit by which he confirmed the allegation relating to his application for a job at Pan American; stated that at the time he pled guilty and was placed on probation the judge had told him "there would be no record of this matter;" and stated that because of the existence of records relating to the case he was required to obtain character references when he applied for enlistment in the Armed Forces. In support of the sheriff's motion for summary judgment, he filed an affidavit of the employee of his office who was in charge of the records. In that affidavit it was stated that the records were kept under security conditions, available only to law enforcement and governmental agencies; that they were not open to inspection of employers, nor were their contents revealed on request of employers; that no inquiries had been received relating to Mulkey's records; and that no one other than himself and the sheriff's attorney had reviewed the contents thereof.
The circuit court granted judgment in favor of the plaintiff, or petitioner. The judgment ordered the sheriff to expunge and destroy all records relating to the petitioner's criminal case which were in his possession or control including fingerprints and photographs, and to obtain the return of copies thereof which had been sent to the FBI and destroy them. The judgment also ordered the judges of the criminal court of record to direct their clerk to seal the file of the case in that court (No. 59-5544), and ordered the clerk of the circuit court to seal the file of this case in the circuit court. The defendant sheriff then filed this appeal. We find merit in the appeal, and reverse.
We agree with the contention of the appellant that the action of the circuit court in ordering the expunging and destruction of the records relating to the petitioner's offense, and for the sealing of the court records of the case, on the basis of the showing in the amended petition, was improper and constituted error. As pointed out by the appellant, the discretion to make the fingerprint records was placed in the sheriff alone, by virtue of the authorizing statute, and there is no statutory provision for the expunging or destruction of such records in the event of acquittal, dismissal of the charge, or in case of probation.[3]
In making a record of the fingerprints of the petitioner in 1959, the sheriff was acting under a statute which stated that it was his duty to do so when in his opinion it was necessary for the protection of the public. The fact that the sheriff made the fingerprint records of the petitioner following his arrest is sufficient to establish, in the absence of a showing to the contrary, that the then sheriff was of the opinion that such action was necessary *136 for the protection of the public. This is so because there is a presumption that public officials act properly in the performance of their duties, and because it seems obvious that if the sheriff who acted in 1959 had been of the opinion that there was no public necessity to take the fingerprints, it is unlikely that they would have been taken. By intervening and denying the allegation of the petition which implied that the sheriff was not opposed to the expunging of the records in question, and by opposing the petition in the trial court and taking this appeal from the judgment granting the petition to expunge, the incumbent sheriff has adequately demonstrated his opinion that it is in the public interest for the fingerprint records so taken to be retained.
It is well settled that when a sheriff or police officer, proceeding under the common law without express legislative authority, and a fortiori when acting under legislative authority, makes fingerprint records of one charged with or convicted of an offense, a court may not order those records expunged or destroyed, even when the accused has been acquitted or the charge dismissed, in the absence of a statute making provision therefor,[4] (with an exception being observed in some of the authorities that a court of equity can expunge such records on a showing of strong equitable reasons). See United States v. Kelly, 2d Cir.1932, 55 F.2d 67, 83 A.L.R. 122; Sterling v. City of Oakland, Cal. App. 1962, 24 Cal. Rptr. 696; State ex rel. Mavity v. Tyndall, 224 Ind. 364, 66 N.E.2d 755; reaffirmed in 225 Ind. 360, 74 N.E.2d 914, appeal dismissed 333 U.S. 834, 68 S.Ct. 609, 92 L.Ed. 1118, rehearing denied, 333 U.S. 858, 68 S.Ct. 732, 92 L.Ed. 1138; Voelker v. Tyndall, 226 Ind. 43, 75 N.E.2d 548; Roesch v. Ferber, 48 N.J. Super. 231, 137 A.2d 61; Statman v. Kelly, 47 Misc.2d 294, 262 N.Y.S.2d 799.
The underlying reason for so holding is that upon the balancing of the interests between the individual who seeks to expunge the records, on the one hand, and the *137 sheriff or police as the representative of the public to make and retain them, on the other hand, the balance of interest lies with the sheriff (or police) and the public. In so deciding, the Indiana Supreme Court in State ex rel. Mavity v. Tyndall, supra, cited Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430, and quoting therefrom said: "`But the right of privacy has its limitations. Society also has its rights,'" and in dealing with the same problem in a subsequent case (Voelker v. Tyndall, supra) the Indiana Court said:
"Appellant bases his claim for possession and damages for detention upon the doctrine of the Right of Privacy. This is a well-established doctrine, derived from natural law and guaranteed by both the Federal and State Constitutions. As between man and man it must be respected. Appellant has cited many authorities to that effect.
"However, this right has its limitations. Society too, has its rights. Under our form of government citizens have rights  which even the government may not invade and should the government trespass upon such rights the courts should grant redress. But the citizen has obligations and duties to the community, and to the government which he must keep and perform. To preserve rights for himself he must aid in preserving them for all. There must be cooperation, and always the rights of the individual must be balanced with the duties incumbent upon him as a citizen. Barber v. Time, Inc., 1942, 348 Mo. 1199, 159 S.W.2d 291. State ex rel. Mavity v. Tyndall et al., supra."
In Roesch v. Ferber, supra, where the court reversed summary judgment which ordered a defendant sheriff to return the plaintiff's fingerprints and photographs for destruction thereof, the court said (137 A.2d at 63):
"On appeal the defendant contends that sheriffs and other law enforcement officials charged with the custody of prisoners not only have the right but the duty to fingerprint and photograph all persons committed to their custody, regardless of the seriousness of the charge  and this not only by virtue of the statute, R.S. 53:1-14, N.J.S.A., but also under the common law. Whether such identification should be returned or retained rests solely, it is said, in the discretion of the police authorities. If there has been any invasion of plaintiff's claimed right of privacy, that is an inconvenience to which he must necessarily submit. It is part of the price every one pays for being a member of society.
"We consider defendant's position sound and well supported by authority, so as to require reversal of the judgment under review."
Further in that case (137 A.2d at 72) the court said:
"* * * The weight of authority supports the resting of discretion in the police authorities as to whether identification records should be returned or not.
"The law reviews, in balancing the interest of the public against the rights of the individual, also support the weighting of the scales in favor of the public insofar as the retention of fingerprint and photograph records are concerned. This is qualified by the general view that each case should be decided on its own facts, for it is conceivable that a case justifying relief might arise. * *"
In these times the taking of one's fingerprints and the retention thereof for purposes of future identification do not constitute actionable invasions of the right of privacy of the individual. Fingerprints of all members of the Armed Forces are taken and retained, as are those of civil service employees of the United States. Infants born in hospitals are footprinted at birth. The policy of the State of Florida is to have fingerprint records of its employees, including the judges of this court. Some corporate employers insist thereupon *138 as a condition of employment. Is it any less justifiable to obtain and preserve such identification records of persons arrested and charged with or convicted of a criminal offense?
As shown by the cases dealing with efforts to expunge fingerprint records, such factors as acquittal or termination of the case without conviction, possible embarrassment to the offender, or that the existence of the records may hinder the individual in obtaining employment or a license or admission to a profession, have been regarded as insufficient to overcome the discretion of a sheriff or other police officials for the making and retention of the records.[5] There would appear more reason in the present case to deny the expunging thereof where the guilt of the party arrested, though not adjudicated, was indicated by his plea. In fact, our examination of the authorities fails to reveal any case where such records were expunged as to one who was convicted, or who had pled guilty to a criminal offense. Nor is a person in such position entitled to have the court's docket entries of his case erased and the court file thereof removed or sealed. Cf. State ex rel. Mavity v. Tyndall, supra, 66 N.E.2d at 760.
Those decisions in which it has been said there may be strong equitable considerations, which, when duly presented, can furnish a basis for expunging of the records, do no more than to state that proposition. They do not enunciate circumstances that would constitute "strong equities" which would justify the relief.
There is no showing that the existence of the records in the petitioner's case, having been on file for some years, presently are causing or are likely to cause him any adverse publicity. What practical advantage then would the petitioner gain by having the docket entries of his case erased, and the court file thereof sealed, together with destruction of the sheriff's fingerprint and photograph records? The amended petition implies that the elimination of the records would serve to satisfy the questionable policy or desire of a prospective employer. Another result would be to make it possible for the petitioner to deny the facts of the matter, falsely but with a measure of impunity, when answering questionnaires (although we assume such was not the purpose of the petitioner in seeking expungement). Those objects or results would not constitute adequate grounds at law or in equity to overcome the public interest involved.
The appellee argues that since a purpose of § 948.01 Fla. Stat., F.S.A., is to enable a defendant to avoid having a record of a conviction, when, under the authority of that statute, the court withholds an adjudication of guilt and places on probation a defendant who is found guilty or pleads guilty to an offense with which he is charged, it would be a logical extension of the purpose of the statute in that respect to eliminate all records of the case. In our view that argument is lacking in merit. When an adjudication of guilt is withheld by the court, as authorized by the statute, then notwithstanding the fact that the defendant may have been found guilty by a jury or by a court, or has pled guilty, there is no record of conviction, since no judgment of conviction was entered. But that result furnishes no ground, in the absence of an authorizing statute, to obliterate the *139 record of the court proceedings in the case, or of fingerprint records made incident thereto under authority of law. See footnote No. 4, supra.
We hold, in accordance with the clear weight of authority, that the making of fingerprint records of a person charged with an offense against the laws of the state is a matter resting in the sheriff's discretion as to the need thereof for the protection of the public. The Florida statute in effect at the time involved here made it the duty of the sheriff to do so when in his opinion it was necessary in the interest of the public, and the present statute expressly so authorizes as to crimes other than felonies, and as to felonies the statute so directs. Likewise, as more fully dealt with hereinabove, in the absence of statutory direction or authority for the return or expunging of such records in given circumstances, or of strong overriding equitable considerations, the decision as to whether the records shall be retained, for the obvious public purposes, is one of discretion which is reposed in the sheriff, and not in the courts.
For the reasons stated the summary judgment entered in favor of the plaintiff-petitioner is reversed, and the cause is remanded to the circuit court with direction to enter an order dismissing the amended petition.
Reversed and remanded.
NOTES
[1] As amended subsequently, § 30.31 Fla. Stat., F.S.A., in its present form requires sheriffs to fingerprint all persons charged with or convicted of a felony, and as to other criminal offenses provides that sheriffs may fingerprint persons charged with or convicted thereof when in their opinion it is necessary for the protection of the public. The present statute, as did the statute which was in effect in 1959, requires sheriffs to send copies of all fingerprints made by them to the FBI.
[2] That disposition of the case by the criminal court of record was authorized by § 948.01 Fla. Stat., F.S.A., which provides that when a defendant is found guilty or pleads guilty, the trial court, in exercise of its discretion within the range of certain standards set out there, may withhold the adjudication of guilt and place the defendant on probation, and by § 948.04 provides that upon termination of the period of probation, the defendant shall be released from probation and shall not be liable to sentence for the crime for which probation was allowed.
[3] Of course, a party could be entitled to have such records returned, expunged or destroyed where there is a statute requiring that to be done when an accused is acquitted or released without conviction. See Maxwell v. O'Connor, 415 Ill. 147, 112 N.E.2d 469. In Statman v. Kelly, 47 Misc.2d 294, 262 N.Y.S.2d 799, 802, reference is made to statutes in California, Connecticut, and Delaware dealing with return or expunging of such records. The Connecticut statute permits them to be erased on petition after three years from dismissal, and the California and Delaware statutes provide for the expunging of such records, in certain circumstances, as to defendants who, after a plea of guilty or conviction, have been placed on probation and subsequently discharged therefrom.

The Florida fingerprint statute was enacted in 1943 (ch. 22047 §§ 1, 2), and has received consideration by the legislature and been re-enacted and amended on several occasions including twice since 1959 (ch. 63-170, Laws 1963, and ch. 67-2207, Laws 1967, Ex.Sess.). The fact that the legislature did not see fit on those several considerations of the statute to add or include a provision for expunging such records under certain circumstances is significant in considering the absence of legislative authority or direction for the expunging thereof.
[4] In Sterling v. City of Oakland, 1962, 208 Cal. App.2d 1, 24 Cal. Rptr. 696, 699, after pointing to the absence of legislation authorizing the return of fingerprints made upon arrest, and in holding against the return thereof, the court said:

"There is no statute in this state on the subject of return or destruction of photographs or fingerprints of persons who have been accused of crime, either misdemeanor or felony, and who have been acquitted on trial or dismissed without trial. * * *
* * * * *
"We deem the subject matter to reside principally within the legislative domain. * * * The magnitude of the task of returning fingerprints and photographs on demand, and of making certain that they are returned to the correct person, is a matter for legislative consideration. As to fingerprints, there may be considered the facts that fingerprinting has been so common that it seems that by 1956 over 70,000,000 persons' fingerprints had been recorded in the Federal Bureau of Investigation, and that fingerprinting in itself, apart from arrest, is no longer considered an indignity (see Everett, New Procedures of Scientific Investigation and the Protection of the Accused's Rights (1959) Duke L.Rev. 45); and that, although the taking of the fingerprints of a person arrested who is wholly innocent may have been of more or less mortification, the filed prints are decipherable only by experts. * * * Photographs, of course, are in a somewhat different category, but here, too, the filing may be so handled as to prevent disclosure. Whether they are generally in danger of falling into the view of others than the custodians, or are well guarded, is a matter which the Legislature, if it desires, can determine. Although particular cases may be presented in which privacy would be so threatened, by indiscriminate or injudicious display of a photograph by custodians of records, and particularly of photographs, as to justify action by a court of equity, there is nothing in the pleading in this case which is of that nature.
"If the Legislature should come to the conclusion, in general, that there should be delivery of the items, there would still be the matter of possible classification according to the types of offense charged, what demand would be necessary, and other details requiring the particularity of a statute."
[5] "Rogues Gallery" cases are not applicable here. Courts generally will restrain public circulation or dissemination of such records, holding that the balance of interest as between the individual and the governmental authority favors the individual in that situation. See cases cited in Sterling v. City of Oakland, Cal. App. 1962, 24 Cal. Rptr. 696, at 698-699. And see State ex rel. Mavity v. Tyndall, Ind. 1946, 66 N.E.2d 755, at 762. This, however, is not a "rogues gallery" case. The amended petition contained no allegation that the petitioner's arrest records are being published or that his photographs are being placed on public display. On the contrary, the affidavit filed by the sheriff showed that petitioner's records held by the sheriff were being retained under security measures, and not open to public inspection.