234 So.2d 108 (1970)
Adrian MULKEY, Petitioner,
v.
E. Wilson PURDY, As Sheriff and Director of the Public Safety Department of Dade County, Florida, Respondent.
No. 39241.
Supreme Court of Florida.
April 8, 1970.
*109 Ralph H. Bearden, Jr., Miami, for petitioner.
Thomas C. Britton, County Atty., and Joseph D. Komansky, Asst. County Atty., for respondent.
ROBERTS, Justice.
This cause is before the court on petition for certiorari to review the decision of the District Court of Appeal, Third District, in Purdy v. Mulkey, Fla.App., 228 So.2d 132. The question of law presented has been certified by the appellate court as being one of great public interest under Section 4(2), Article V, Constitution of Florida, F.S.A. In its certificate the District Court stated that the case, "`passes upon a question * * * of great public interest' regarding the right of sheriffs to retain fingerprint and photograph records made under § 30.31, Fla. Stat., of persons charged with or convicted of misdemeanors, against a claim of one such who was placed on and served probation, to have the records expunged, in the absence of legislation directing or authorizing the expunging thereof in such circumstance."
The facts are stated in the opinion of the appellate court and need not be repeated here in detail. Briefly, the case concerned the arrest in 1959 of petitioner-Mulkey who was informed against and charged with the crime of attempt to commit petit larceny, a misdemeanor. Upon arrest he was fingerprinted and photographed by the Sheriff and copies of the fingerprints were sent to the Federal Bureau of Investigation under authority of § 30.31, Fla. Stat., F.S.A., then effective: "(1) It is hereby made the duty of the sheriffs of the state, when in their opinion it is necessary for the protection of the public, to fingerprint all persons charged with or convicted of any criminal offense. (2) The sheriffs of the respective counties are hereby required to furnish a copy of all fingerprints made by them to the federal bureau of investigation."[*] Mulkey pleaded guilty when arraigned and the court entered an order withholding adjudication of guilt and placed him on probation. Eight years *110 after discharge, upon motion for summary judgment by both petitioner-Mulkey and respondent-Sheriff Purdy, the Circuit Court granted judgment in favor of Mulkey ordering the Sheriff to expunge and destroy all records relating to petitioner's criminal case which were in his possession or control including fingerprints and photographs, and to obtain the return of copies thereof which had been sent to the FBI and to destroy them. The file was ordered sealed.
Upon appeal, the District Court reversed, holding that the Sheriff had express statutory authority to fingerprint and photograph petitioner, the unrefuted presumption being that the public official properly performed his duties and "that if the sheriff who acted in 1959 had been of the opinion that there was no public necessity to take the fingerprints, it is unlikely that they would have been taken." It also noted that respondent-Sheriff "by opposing the petition in the trial court and taking this appeal from the judgment granting the petition to expunge * * * has demonstrated his opinion that it is in the public interest for the fingerprint records so taken to be retained." The appellate court further held that a court may not order records made under the common law or, a fortiori, under legislative authority, expunged or destroyed, even when the accused has been acquitted or the charge dismissed, in the absence of statutory authority or strong overriding equitable considerations. We agree.
The contention that § 948.01 Fla. Stat. F.S.A.  When courts may place defendant on probation  logically requires the elimination of all records of the case when the court withholds an adjudication of guilt and places a defendant on probation after a defendant is found guilty or pleads guilty to an offense, is without merit. Both § 30.31 and § 948.01, Fla. Stat. had legislative attention by amendment in 1967. Had § 948.01, amended effective June 19, 1967, been intended as an extension or curtailment of § 30.31 the latter statute would have reflected the intent when it was amended effective October 1, 1967. Sec. 30.31 clearly requires the fingerprinting of all persons charged with or convicted of a felony and it further places the discretionary duty on the sheriffs of the state to fingerprint all persons charged with or convicted of any criminal offense, which of course includes misdemeanors, when in the opinion of the sheriff it is necessary for the protection of the public. Petitioner can rely on no statute in his attempt to expunge the record and even though he alleges that he was only 17 at the time of the offense he was an "adult" insofar as responsibility for crime is concerned under Chapt. 39, Juvenile Courts, which provides more lenient treatment for a "child" under 17. Moreover § 39.12, which was amended in 1967 (effective July 1, 1967), provides for the destruction of records of those under 17 but imposes restrictions, to wit: "(2) The juvenile court shall make and keep records * * * pertaining to a child until ten (10) years after the last entry was made and may then destroy them, except that records of cases where orders were entered permanently depriving a parent of the custody of a child shall be preserved permanently." (Emphasis supplied.) There is no statute on the subject of return or destruction of photographs or fingerprints of adults who have been accused of crime regardless of the determination of the charges. Whether such a statute should be enacted is a matter residing principally within the legislative domain where the lawmakers would carefully consider the magnitude of the task of returning fingerprints and photographs, classification according to the offense, type of demand by the offender, and other problems attendant requiring the particularity of a statute. Cf. Sterling v. City of Oakland (1962), 208 Cal. App.2d 1, 24 Cal. Rptr. 696. We pause to note and agree with a statement of a New York court when considering a petition by a group of students to have their arrests expunged from the record when charges against them were dropped, "To allow the precedent would constitute a gross disregard of orderly procedures in legally constituted forums by *111 duly provided methods. The commands of a government of laws require that this court confine its acts within the scope of judicial power recognizing the co-equal powers of the other branches of the government." Statman v. Kelly, (1965), 47 Misc.2d 294, 262 N.Y.S.2d 799. Our retention of judicial review in cases of "overriding equitable considerations" is to provide a remedy in a rare case where it is undeniable that the Sheriff abused his statutory discretion in making fingerprints.
The decision of the appellate court here reviewed having properly reversed the decree of the lower court, the writ heretofor issued in this cause should be and it is hereby discharged.
It is so ordered.
DREW, THORNAL and ADKINS, JJ. concur.
ERVIN, C.J., dissents with opinion.
ERVIN, Chief Justice (dissenting):
The majority opinion denies any degree of relief or remedy by way of suppression, concealment, or expunction of fingerprint or photograph records of a citizen who was charged with or convicted of a criminal offense, which fingerprint or photograph was taken by a sheriff and is permanently maintained in his office as a public record regardless of the circumstances of the particular case, including alleged irreparable individual injury, solely because there is no statutory provision affording such relief. Implicit in the maintenance of such a public record ("rogues' gallery") is the fact that the subject was charged with or convicted of a criminal offense. Information of the charge or the conviction usually accompanies the pubblic record of the fingerprint or photograph of the subject.
I do not believe the general law of equity is so sterile and ineffective as never to afford any relief in any such situation.
The statute relevant to the issue posed (F.S. § 30.31, F.S.A.) does no more than make it the duty of sheriffs to fingerprint persons charged or convicted of any felony and submit such prints to the FBI and the Florida Bureau of Law Enforcement. It also authorizes sheriffs to fingerprint persons charged or convicted of other criminal offenses, when in their opinion it is necessary for the protection of the public. The statute makes no reference to the photographing of such persons nor does it expressly or impliedly provide that such fingerprints be made permanent, immutable public records in the sheriff's office, or other state office, wholly beyond the power of a court of equity to review their continuing attendant use or effect as public records and determine specific equities concerning the same.
It is entirely appropriate for criminal identification purposes that such records be made and preserved for so long as they serve a useful public purpose, but they should nevertheless be subject to equitable considerations in proper cases as to their continued future use and disposition in situations affecting the individual rights of citizens.
The statute neither expressly nor by necessary implication precludes an equity court in a proper case from determining a bona fide issue relating to individual rights, i.e., whether such fingerprint or photograph record and coincident criminal record should be further preserved or their use as public records be suppressed to some degree  or expunged at some time in the future.
Since the statute neither expressly nor impliedly precludes equity jurisdiction, it is incorrect to predicate a holding thereon that no such jurisdiction can ever exist to determine any case whatsoever and regardless of what the extraordinary circumstances may be solely because of the absence of enabling legislative authority.
The District Court in its opinion refers to Roesch v. Ferber, 48 N.J. Super. 231, 137 A.2d 61, *112 72, the holding in which states that in balancing the interest of the public against the rights of the individual the law favors retention of fingerprints and photograph records, but that modern legal writers assert that this holding should be qualified by the view each case brought on for equitable consideration should be decided on its own facts, for it is conceivable that a case justifying relief might arise. I agree.
Blanket denial of equitable relief in every case, no matter how damaging the criminal public record may be to an individual's character and reputation, is harsh and obdurate official treatment and contrary to the principle there is no wrong without a remedy.
The instant case is not one that requires equity to blindly follow the law. Equity courts do not slavishly follow the letter of the law if extraordinary circumstances or countervailing equities call for relief. 27 Am.Jur.2d, page 650. Compare Adler-Built Industries, Inc. v. Metropolitan Dade County, Fla., 231 So.2d 197, relative the power of an equity court to reduce without statutory authority therefor a statutory tax penalty deemed unconscionable.
12 Fla.Jur., Equity, pages 225 and 226, summarizes Florida appellate court decisions as follows:
"Equity ordinarily follows the law. The maxim cannot, however, be regarded as a general principle. For although equity must be guided by general rules and precedents, and cannot subvert established rules of law, it has a much broader field of action. Indeed, courts of equity evolved to overcome the rigidity of courts of law, and the very purpose of such courts would be defeated if the maxim `Equity follows the law' had universal application."
Equity often fills the gaps and interstices in the law where the law through neglect or oversight fails to protect individuals against hardship and injury. The mere absence of any ameliorating provision in the fingerprint statute providing relief therefrom in specific instances of hardship and injury does not convert such absence or oversight into an affirmative prohibition against equity relief.
Examples have been brought to our attention where "rogues' gallery" records of arrests or charges for petty offenses originally made in youthful years of indiscretion of certain culprits have been used most damagingly to their reputations and their ambitions many years later, long after they had become respected citizens.
The equity court, if it finds some relief is warranted, can fashion its decree to fit the particular circumstances protecting the individual right without doing material harm to the public interest. For example, it could seal the particular file or entry covering a plaintiff's fingerprint or photographic criminal record, subject to reopening for cause at any time, just as unsavory divorce files have often been sealed. Or it could find that the alleged harm of the record to Petitioner was so inconsequential and insignificant as to warrant no relief.
In summary: It appears to me, first, the relevant statute in nowise precludes equity jurisdiction of the case made by the Petitioner because it does not reach that far; and, second, equity is particularly designed to afford relief to Petitioner by suppression of his fingerprint or photographic criminal record in the sheriff's office or other state office if a clear and convincing showing can be made that the continuing maintenance and use of such public record unreasonably and irreparably harms his individual and economic interests in gaining a livelihood and to reasonably suppress it would not result in harmful injury to the public.
I would quash the decision below with instruction to the District Court to review the merits of the appeal without regard to the fact "there is * * * absence of legislation directing or authorizing the expunging *113 thereof [of such records] in such circumstances." I think the equity courts are historically authorized and perfectly competent and capable of deciding, without the benefit of special enabling legislation, cases of this kind giving due regard to the competing rights of private and public interests.
My disagreement with the decision of the District Court is that it ought not to hold that the equity courts are impotent to afford any relief in a case of this kind, no matter how grievous the injury of the fingerprint and photographic criminal record is to an individual, merely because there is no enabling statute for them to do so.
NOTES
[*] § 30.31 Fla. Stat., F.S.A., as amended 1969.

"(1) It is the duty of the sheriffs of the state to fingerprint all persons hereafter charged with or convicted of a felony upon so being charged or convicted and to submit such prints to the federal bureau of investigation and the Florida bureau of law enforcement. The sheriffs of the state may fingerprint all persons charged with or convicted of any criminal offense when in their opinion it is necessary for the protection of the public."